**Jennifer Lynne McCLARY f/k/a Jennifer Lynne Thompson, Appellant,**

v.

**Darrell Ray THOMPSON, Appellee.**

**No. 2–01–129–CV.**

Court of Appeals of Texas, Fort Worth.

Jan. 17, 2002.

---

David R. Sweat, Arlington, for Appellant.

Alley, Goza, Mullen & Minick, Richard Alley, Fort Worth, Travis E. Alley, Granbury, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### INTRODUCTION

This is an appeal from a judgment granting a divorce and dividing the parties' community estate, following a trial to the court. In four issues, Appellant, Jennifer Lynne McClary, f/k/a Jennifer Lynne Thompson (McClary), complains of the trial court's characterization of funds contained in her ex-husband's retirement plan account at the time of the divorce and acquired during the marriage as his separate property.

### ISSUES

Conceding that the initial contributions to the retirement plan made before the marriage are the separate property of her ex-husband, Appellee Darrell Ray Thompson (Thompson), McClary contends by her first issue that the trial court erred in failing to characterize the contributions made to the plan during the marriage and the interest earned on those contributions as community property. By her second issue, McClary asserts that the parties' premarital agreement did not address contributions to be made during the marriage and, therefore, did not convert community contributions to the plan to separate property. Thirdly, and alternatively, McClary argues that the premarital agreement is void and therefore unenforceable. In her fourth issue, McClary asserts that the trial

court erred in admitting parol evidence about whether the parties intended the premarital agreement to cover future contributions to the retirement plan.

We hold that the contributions and interest earned during the marriage were community property and that the premarital agreement did not convert the character of those contributions into separate property. We affirm that portion of the trial court's judgment granting a divorce to the parties and dividing the parties' estate in accordance with their agreement. We reverse that portion of the judgment holding the entirety of the retirement plan to be Thompson's separate property and remand to the trial court as to the division of the Texas District and County Retirement System Plan.

## FACTUAL AND PROCEDURAL HISTORY

The relevant facts are undisputed. McClary and Thompson were married on October 11, 1985. At the time of their marriage, Thompson had been employed for approximately five and one-half years by Tarrant County as a medical investigator in the Medical Examiner's Office. As an employee of Tarrant County, Thompson participated in the Texas County and District Retirement System Plan during his employment. At the time of the marriage, the balance in Thompson's account in the retirement plan was $11,962.28. The retirement plan was a "defined contribution plan" to which both Tarrant County and Thompson regularly made contributions.

Before their marriage, McClary and Thompson entered into an "Agreement in Contemplation of Marriage" (the premarital agreement) with the stated desire "to partition and divide their separate property so that, as [therein] provided, each party shall become the separate owner of such properties in the event of dissolution of the contemplated marriage." The agreement, drafted by the husband's attorney, provided that four assets owned by McClary and Thompson at the time of the marriage would remain the separate property of each as long as that property was not sold or liquidated prior to the dissolution of the marriage; however, if the property was sold during marriage the proceeds would become community property.

Specifically, the agreement addressed Thompson's equity in real property in Benbrook, Texas, a 1977 Marquis boat owned by Thompson, a certificate of deposit (CD) owned by McClary, and Thompson's proceeds in the retirement plan. During the marriage the parties disposed of the real property, the boat and the certificate of deposit. When Thompson filed for divorce in 1999, the only remaining asset addressed in the premarital agreement was Thompson's account in the retirement plan.

At the time of divorce, the balance in the retirement plan account was $116,754.39. Before trial, the parties agreed upon the division of all assets and liabilities of the marital estate except that portion of the retirement plan account acquired during the marriage, which totaled $104,771.72. As to that portion of the account, the parties stipulated that each was to be awarded 50% of that portion of the retirement plan found by the trial court to be community property. Pursuant to the parties' agreement, trial was limited to the issue of what portion of the retirement plan account was Thompson's separate property and what portion was community property, including construction of the premarital agreement as to its effect, if any, on the nature of that interest. The trial court awarded the entirety of the retirement account, including that portion ac-

quired during the marriage, to Thompson as his separate property.[1]

## DISCUSSION

In McClary's first issue, she contends that the portion of the retirement plan acquired during the marriage was community property. Specifically, McClary argues that Thompson's retirement plan was a defined contribution plan and, as a matter of law, all contributions made and interest earned in the account during the fifteen-year marriage were community property. Thompson responds, arguing that the "inception-of-title" doctrine applies to the retirement plan. Because his premarital contributions were separate property, he urges that the entire retirement plan account, including contributions made during the marriage and interest earned on those contributions, constituted his separate property. Further, Thompson contends that McClary failed to object to the findings of fact and conclusions of law and, accordingly, the findings of fact and conclusions of law are presumptively correct.

■ Initially, we reject Thompson's contention that McClary failed to preserve error by failing to complain of the findings of fact and conclusions of law. McClary properly preserved error with her timely motion for new trial, which was denied by written order, complaining of the incorrect characterization of the entire amount of the retirement plan as Thompson's separate property. We also agree with McClary that the contributions to and interest earned in the retirement plan during the marriage were community property.

■ The Texas Family Code requires the trial court to order a "just and right" division of the parties' estates in a divorce proceeding. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998); *Lipsey v. Lipsey*, 983 S.W.2d 345, 350 (Tex.App.-Fort Worth 1998, no pet.). The trial court has wide discretion in the division of marital property, and we will not disturb its decision unless the trial court has clearly abused its discretion. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985); *Lipsey*, 983 S.W.2d at 350. However, the mischaracterization of a major asset of the estate of the parties is reversible error affecting the just and right division of the community estate. *Jacobs*, 687 S.W.2d at 733; *In re Marriage of Joiner*, 755 S.W.2d 496, 499 (Tex.App.-Amarillo 1988, no writ).

■ The family code further requires that a decree of divorce must determine the rights of both parties to the marriage in a pension plan, retirement plan, annuity, individual retirement account, or other form of savings, profit sharing, or financial plan as to an employee. TEX. FAM.CODE ANN. § 7.003 (Vernon 1998). Moreover, despite its wide discretion, a trial court must apportion retirement benefits in accordance with the value of the community interest in the benefits at the time of the divorce. *Baw v. Baw*, 949 S.W.2d 764, 767 (Tex.App.-Dallas 1997, no writ).

## I. The Defined Contribution Retirement Plan

■ The Texas Constitution defines separate property as a spouse's real or personal property owned before marriage or acquired during marriage by gift, de-

1. The trial court also made findings of fact and conclusions of law to that effect. Specifically, the court concluded that "under the terms of the parties' Agreement in Contemplation of Marriage (Petitioner's Exhibit "1"), Darrell Ray Thompson's interest in the Texas County and District Retirement System Plan, in the event of the parties' divorce, would be his sole and separate property, and the same is confirmed to him as such."

vise, or descent. TEX. CONST. art. XVI, § 15. Community property consists of property other than separate property that is acquired by either spouse during the marriage. TEX. FAM.CODE ANN. § 3.002 (Vernon 1998); *Lipsey*, 983 S.W.2d at 350. However, when separate property produces income, and that income is acquired by a spouse during marriage, it is community property. *Lipsey*, 983 S.W.2d at 350. A fundamental tenet of the community property system is that whatever is acquired during marriage by the talent, toil, or other measure of productivity of either spouse is community property. *Winger v. Pianka*, 831 S.W.2d 853, 857 (Tex.App.-Austin 1992, writ denied). Thus, any spouse's personal income is community property. *Id.; Maben v. Maben*, 574 S.W.2d 229, 232 (Tex.Civ.App.-Fort Worth 1978, no writ).

■ "Generally, whether property is separate or community is determined by its character at inception." *Barnett v. Barnett*, 2000 WL 33651828, at *3, —— S.W.3d ——, —— (Tex.2001). Most forms of property, including real estate, life insurance policies, and stock options, have been characterized as community or separate based upon their character at inception. *See id.* (holding term life insurance policy acquired during marriage with premiums paid from community funds constituted community property); *Charriere v. Charriere*, 7 S.W.3d 217, 221 (Tex.App.-Dallas 1999, no pet.) (holding stock option acquired during marriage was community property); *Roach v. Roach*, 672 S.W.2d 524, 530–31 (Tex.App.-Amarillo 1984, no writ) (holding character of real property as community or separate was determined by inception-of-title rule). Inception occurs when a party first has a right of claim to the property, i.e., when title is finally vested. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, no

pet.); *Winkle v. Winkle*, 951 S.W.2d 80, 88 (Tex.App.-Corpus Christi 1997, writ denied); *see also McCurdy v. McCurdy*, 372 S.W.2d 381, 383 (Tex.Civ.App.-Waco 1963, writ ref'd) (refusing to adopt apportionment formula to determine character of a life insurance policy as community or separate property, and, instead, holding that the inception-of-title rule applied).

In contrast to stock options, life insurance policies, or real estate, a spouse's interest in a retirement or pension plan is regarded as a mode of employee compensation earned over the length of a given period of employment. *Charriere*, 7 S.W.3d at 221; *see, e.g., Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex.1976) (holding accrued benefits earned during marriage constituted community asset subject to division on divorce); *see also Sanderlin v. Sanderlin*, 929 S.W.2d 121, 122 (Tex. App.-San Antonio 1996, writ denied) (holding that retirement benefits that accrued prior to the marriage were separate property and those accrued during the marriage were community property); *Dewey v. Dewey*, 745 S.W.2d 514, 518 (Tex.App.-Corpus Christi 1988, writ denied) (holding benefits accrued in retirement plan during marriage constituted community property).

Because benefits in a retirement or pension plan are regarded as earned over a period of time, Texas courts have fashioned apportionment formulas to allocate to the community estate benefits earned during the marriage. The formula used depends upon whether the plan is a "defined contribution plan" or a "defined benefit plan." *See* Steven R. Brown, Comment, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post Judgment Partition Actions*, 37 BAYLOR L.REV. 107, 136–37 (1985).

The plan at issue here is a defined *contribution* plan whereby the employee has an individual account. *Baw*, 949 S.W.2d at

768 n. 2. The employee makes periodic contributions to the account, which may be matched by the employer. *Id. Brown, An Interdisciplinary Analysis,* 37 BAYLOR L.REV. at 112–13. An employee participating in a defined contribution plan has a separate account, analogous to a savings account, the value of which is easily ascertained at any given time by simply looking at the account. *Smith,* 22 S.W.3d at 148–49; *Hatteberg v. Hatteberg,* 933 S.W.2d 522, 531 (Tex.App.-Houston [1st Dist.] 1995, no writ); Brown, *An Interdisciplinary Analysis,* 37 BAYLOR L.REV. at 112–13.

▆▆▆▆ To determine the portion as well as the value of a defined contribution plan that is community property, courts subtract the amount contained in the plan at the time of the marriage from the total contained in the account at divorce.[2] *See, e.g., Smith,* 22 S.W.3d at 149; *Baw,* 949 S.W.2d at 767–68; *Pelzig v. Berkebile,* 931 S.W.2d 398, 402 (Tex.App.-Corpus Christi 1996, no writ); *Hatteberg,* 933 S.W.2d at 531; *Iglinsky v. Iglinsky,* 735 S.W.2d 536, 538 (Tex.App.-Tyler 1987, no writ).

▆▆▆ In *Dewey,* the Corpus Christi Court of Appeals addressed the identical argument raised by Thompson here: that because a defined contribution retirement plan commenced prior to the parties' marriage, the plan in its entirety constituted the appellant's separate property. 745

S.W.2d at 518. The *Dewey* court held that the "inception of title doctrine simply does not apply in cases involving retirement or pension benefits." *Id.* at 518–19. The court further held that "[a]ny benefits in the pension plan which accrued on appellant's behalf during the marriage was community property subject to division on divorce." *Id.* at 519 (citing TEX. CONST. art. XVI, § 15); *see also* Brown, *An Interdisciplinary Analysis,* 37 BAYLOR L.REV. at 118 n. 57. (suggesting that by adopting apportionment, Texas courts have abandoned the inception-of-title doctrine as a method of characterizing retirement benefits as separate or community property).

Some cases have held that the inception-of-title rule does apply to determine the character of the portion of a retirement or pension plan depending upon when the benefit was earned. *See, e.g., In re Marriage of Joiner,* 766 S.W.2d at 263 (holding inception-of-title doctrine applied to require 80% interest in profit-sharing plan account to be characterized as community); *see also Cameron v. Cameron,* 608 S.W.2d 748, 751 (Tex.Civ.App.-Corpus Christi 1980), *rev'd on other grounds,* 641 S.W.2d 210 (Tex.1982) (holding inception-of-title doctrine applied to retirement benefits such that, those benefits acquired during marriage, while parties resided in community property state, were community property while those benefits that accrued

2. A defined *benefit* plan, as contrasted with a defined *contribution* plan, provides a benefit based on years of service along with other factors such as age and salary history. *Smith,* 22 S.W.3d at 148. Accrued benefits in such a plan, earned during the marriage but not vested and matured during the marriage, have been held to be a contingent property interest that is an asset of the community estate. *Cearley,* 544 S.W.2d at 665–66; *Burchfield v. Finch,* 968 S.W.2d 422, 423 (Tex.App.-Texarkana 1998, pet. denied); *May v. May,* 716 S.W.2d 705, 707 (Tex.App.-Corpus Christi 1986, no writ). Apportionment and valuation

of portions of a defined benefit plan as community or separate are based on three factors: the community share, the community extent, and the value of the retirement benefit. *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983) (adopting formula for calculating value of share of non-employee spouse); *Taggart v. Taggart,* 552 S.W.2d 422, 424 (Tex.1977) (adopting formula for determining extent of community share); *Cearley,* 544 S.W.2d at 665–66 (applying formula); *see also* Brown, *An Interdisciplinary Analysis,* 37 BAYLOR L.REV. at 136–37.

while parties resided in common law states, or while spouse was single, constituted separate property). In *Mitchim v. Mitchim*, the Austin Court of Civil Appeals observed:

> The 'inception-of-title' rule is applied to determine the [e]xistence of a community-property interest in retirement benefits. The logic of the 'inception-of-title' rule, however, has not been pushed to a rigorous conclusion in determining the [e]xtent of the community interest. A number of the cases hold that the separate or community character of retirement benefits is to be determined by the status of the spouse at the time the benefit was earned. For example, if some of the benefits were earned while the employee spouse was unmarried, then that party is apportioned to him as his separate property.

509 S.W.2d 720, 726 (Tex.Civ.App.-Austin 1974) (citations omitted), *rev'd on other grounds*, 518 S.W.2d 362 (Tex.1975).

 Although we agree with the *Dewey* court that the inception-of-title rule has no application in the context of retirement benefits, the fact is that whether we characterize the Texas rule as one of apportionment or inception-of-title, the result is the same, i.e., apportionment. Therefore, we reject Thompson's argument that the character of the entire retirement account must be determined based on the inception-of-title rule. We conclude that, under either theory, the contributions and interest earned during the marriage constituted community property.[3]

## 2. The Premarital Agreement

Having held that the contributions made during marriage were property of the community estate, we are now left to determine if, as argued by Thompson, the trial court correctly construed the premarital agreement in such a manner that all contributions and interest accruing during the marriage would nevertheless constitute Thompson's separate property upon dissolution of the marriage.

In her second issue, McClary asserts that the plain language of the premarital agreement does not specifically classify Thompson's contributions during the marriage to the retirement plan as separate property. McClary thus argues that the agreement cannot be interpreted to convert the community property portion of the plan to Thompson's separate property and thereby divest McClary of any interest in that community asset. Alternatively, she contends that the premarital agreement is void in its entirety by virtue of language in the agreement attempting to convert other property from separate to community, in violation of the Texas Constitution. TEX. CONST. art. XVI § 15 (1987, amended 1999).

Thompson argues that the effect of the premarital agreement is clear or, alternatively, that its effect in converting all contributions to the plan to his separate property was established by testimony re-

---

**3.** McClary contends that Thompson has raised the issue of the inception-of-title rule for the first time on appeal. Parties are restricted on appeal to the theory on which their case was tried. *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex.1978); *Oak Lawn Preservation Society v. Bd. of Managers*, 539 S.W.2d 167, 170 (Tex.Civ.App.-Dallas 1976, no writ). One of Thompson's arguments in the trial court was that those retirement bene- fits that would "remain" his separate property, as referenced in the premarital agreement, were "all benefits ... that [were] present at the date of divorce." Use of the term "remain" implies that all such benefits were separate property from their inception. We interpret this argument as sufficiently raising Thompson's inception-of-title theory, thereby permitting him to argue it on appeal.

garding the parties' intent, and that it may only be attacked as involuntarily made or unconscionable and that those defenses were not supported by any evidence offered by McClary.

The only provision of the premarital agreement expressly addressing the retirement account reads:

> DARRELL THOMPSON has as his separate property all benefits, dividends and earned and unearned proceeds in a retirement program established with Tarrant County, Texas. It is the desire of DARRELL THOMPSON that should such retirement benefits be cashed in or redeemed during the marriage of the parties hereby contemplated, that such proceeds shall become the community property of the parties and shall be considered as such in the event of dissolution of the marriage; provided however, if such retirement benefits remain intact and the marriage is dissolved, such retirement benefits shall remain the separate property of DARRELL THOMPSON.

The Texas Family Code provides that spouses may agree to partition or exchange any part of their community property as they desire. TEX. FAM.CODE ANN. § 4.102 (Vernon 1998); *Winger*, 831 S.W.2d at 859. In order to exchange such property the parties must do so by written agreement. TEX. FAM.CODE ANN. § 4.104 (Vernon 1998); *Winger*, 831 S.W.2d at 859. Here, Thompson and McClary had a written agreement establishing the disposition of certain real and personal property.

A premarital agreement should be interpreted in accordance with the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Pearce v. Pearce*, 824 S.W.2d 195, 200 (Tex.App.-El Paso 1992, writ denied). If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is unambiguous. *Coker*, 650 S.W.2d at 393.

When construing marital property agreements, courts construe agreements narrowly in favor of the community estate. *See, e.g., Byrnes v. Byrnes*, 19 S.W.3d 556, 558 (Tex.App.-Fort Worth 2000, no pet.) (holding that a purported agreement to partition community property was unenforceable for lack of specific partition language). In *Scott v. Scott*, the Waco Court of Appeals held that income from separate property that had been set aside and saved by a spouse was community and had not been transformed into separate property under a premarital agreement because there was no compliance with the agreement, which required that the funds be deposited into the corpus of the spouse's separate property. 805 S.W.2d 835, 837 (Tex.App.-Waco 1991, writ denied). If there are no provisions in an agreement that specifically address the issue of future wages, time, toil, or talent, then the agreement does not convert income constituting community property to separate property. *Winger*, 831 S.W.2d at 859; *Pearce*, 824 S.W.2d at 200; *Scott*, 805 S.W.2d at 837; *Dewey*, 745 S.W.2d at 517; *Maben*, 574 S.W.2d at 232.

Thompson maintains that the trial court's determination that the retirement account was converted to separate property is supported by the language of the agreement. He contends that the phrase "all benefits, dividends and earned and unearned proceeds in a retirement program" is sufficient reference to protect his contributions and interest as separate property.

McClary counters with the argument that the present tense nature of the statement refers solely to the contributions he made prior to marriage and does not spe-

cifically reference future contributions or income. If a written instrument is worded such that it can be given a certain or definite legal meaning or interpretation, then it is unambiguous and the courts must, as a matter of law, construe the meaning of the contract. *Coker*, 650 S.W.2d at 393.

The agreement is written in the present tense. It begins "DARRELL THOMPSON *has* as his separate property." [Emphasis added.] It references "such benefits" previously referred to in the present tense, i.e., at the time of execution of the agreement prior to marriage, and concludes that those benefits *"shall remain* the separate property of DARRELL THOMPSON." [Emphasis added.] The use of the term "remain," in reference to the benefits, clearly refers only to those benefits that were separate property at the time of execution of the agreement. The funds contained in Thompson's retirement account at that time amounted to $11,962.28. The clear intent of the agreement is that "such retirement benefits" (not benefits to be obtained in the future) would remain Thompson's separate property unless he removed them prior to any dissolution of the marriage, in which event they would convert to community property. No portion of the agreement provides that future contributions or benefits will become separate property. Indeed, the plain language of the premarital agreement makes no mention of salary, earnings, income, or employment benefits earned or acquired during the marriage. A similar argument was rejected by the court in *Dewey*, 745 S.W.2d at 514. In that case, the husband contended that income received from his professional corporation during marriage was intended by a premarital agreement to be his separate property. *Id.* The agreement listed certain separate property of each party and provided that all profits, dividends, interest, and proceeds that accumulated after marriage from each of the parties' separate property would remain their separate property. *Id.* at 517. However, because the agreement did not expressly mention the appellant's salary received from his professional corporation during the marriage, the court held that there was no ambiguity and that the salary utilized to fund the appellant's retirement plan was clearly community property. *Id.*

Thompson argues that Texas law has permitted premarital agreements to convert income from community to separate property, waive rights regarding claims to community property, and determine the character of increases in the value of property from separate to community. Thompson insists that the premarital agreement at bar fits in the line of cases allowing for the conversion of income from community into separate property.[4] The cases upon which Thompson relies are distinguishable because in those cases, changing income from community to separate property, the premarital agreement explicitly excluded either the creation of community property[5] or specifically stated that future income would be separate rather than community property.[6] Thompson and McClary's premarital agreement has no such explicit provision.

We hold that the contributions and interest accrued in the retirement account during the marriage of McClary and Thompson are community property, that

---

4. *See, e.g., Dokmanovic v. Schwarz,* 880 S.W.2d 272, 275 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Winger,* 831 S.W.2d at 856.

5. *Dokmanovic,* 880 S.W.2d at 275.

6. *Winger,* 831 S.W.2d at 856.

there is no ambiguity present on the face of the premarital agreement and that the plain and unambiguous language of the agreement does not address and, thus, does not affect the character of the contributions, interest, or benefits accrued in the retirement account of the parties during the marriage as community property. Consequently, we sustain McClary's second issue.

Because we hold that the trial court abused its discretion by characterizing the retirement plan contributions and interest accrued during marriage as separate property, we need not address McClary's third and fourth issues that the agreement is void and that the trial court abused its discretion in admitting parol evidence. Applying the formula espoused in *Baw*, and pursuant to the stipulations of the parties in open court, the trial court should have awarded each party 50% of the value of the community portion of the retirement account at divorce. 949 S.W.2d at 767.

Having determined that the trial court abused its discretion in mischaracterizing the retirement account, we are authorized to affirm and sever the judgment of divorce and to remand the division of property to the trial court. *See Herschberg v. Herschberg*, 994 S.W.2d 273, 277 (Tex. App.-Corpus Christi 1999, no pet.) (holding that appellate court has authority to sever the issue of divorce and remand for redivision of property alone). Having further determined that the trial court's judgment should be reversed to the extent that it mischaracterized the portion of the retirement account acquired during the marriage as separate property, we would ordinarily be required to remand the entire community estate for redivision by the trial court as "just and right." *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985) (holding that remand of entire community estate is necessary when mischaracteriza-tion of property materially affects just and right division of community estate); *see also McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

In this instance, there is no need to redivide the entirety of the community estate because, as previously stated, the parties agreed before trial and the judgment reflects their agreement as to the division of all assets and liabilities of the marital estate, with the exception of expressly submitting to the trial court the issue of the characterization of that portion of the retirement plan acquired during the marriage. We will reverse only as to that portion of the retirement plan.

On the other hand, we have determined after a study of the record that we cannot render judgment because of uncertainty in the record as to the parties' agreement regarding the manner and timing of the division of that portion of the retirement plan determined to be community property. Therefore, we will remand as to the division of the Texas District and County Retirement System Plan.

## CONCLUSION

Accordingly, we affirm and sever the trial court's decree granting the divorce and the property division except as to the Texas District and County Retirement System Plan. We reverse and remand the division of the Texas District and County Retirement System Plan to the trial court for further proceedings in accordance with this opinion.