In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00139-CV
______________________________


 
IN THE MATTER OF THE MARRIAGE OF
TAMMY L. MORRIS AND CHRISTOPHER E. MORRIS
AND IN THE INTEREST OF 
KRYSTAL MORRIS, A CHILD
 


                                              

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2001-D-011


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            From the divorce decree dated September 16, 2002, dissolving the marriage of Tammy L.
Morris and Christopher E. Morris and dividing the property of the parties, Tammy appeals. She
contends the trial court's mischaracterization of certain real property resulted in a disproportionate
property division favoring Christopher. At issue on appeal are four separate items: (1) the timber
on a 63.20-acre tract (and $10,000.00 proceeds from the sale of some of that timber), (2) an
unimproved 2.80-acre tract, (3) the one-acre marital residence, and (4) rights in a shop located near
the residence.
Background
            The relevant dates and events are as follows:
            November 16, 1987. Tammy and Christopher were married. 
 
            December 7, 1990. Tammy, Christopher, and Christopher's parents, Kenneth and Freda
Morris, entered into a sales contract for a square, one-acre tract of land, at the center of which
Tammy and Christopher's marital residence was being constructed at the elder Morrises' expense. 
As consideration for the property and residence, Tammy and Christopher, as purchasers, agreed to
pay Kenneth and Freda $80,000.00 in installments. 

            March 3, 1992. Kenneth and Freda conveyed to Christopher, reciting it was being conveyed
as Christopher's separate property, a 19.68-acre tract of land, excepting and reserving oil, gas, and
other minerals. On this 19.68 acres is located the residence referenced in the December 7, 1990,
sales contract. 

            December 2, 1993. Kenneth and Freda conveyed to Christopher, as his separate property,
an undivided one-half interest in a 63.20-acre tract of land, excepting and reserving oil, gas, and
other minerals. 

            January 20, 1994. Kenneth and Freda conveyed to Christopher, as his separate property, the
other undivided one-half interest in the same 63.20-acre tract of land described in the December 2,
1993, conveyance, excepting and reserving oil, gas, and other minerals. 
            August 17, 1998. Christopher and Tammy obtained an $80,000.00 home equity loan from
Shelby Savings Bank. The loan was secured by the one-acre residence tract—now surveyed and
specifically described—located on the 19.68-acre tract conveyed to Christopher on March 3, 1992. 
October 19, 2000. San Jacinto Sand Company conveyed to Christopher a 2.80-acre tract of land,
excepting and reserving oil, gas, and other minerals. 

            April 19, 2001. Christopher executed a deed to Kenneth, including (1) the 19.68-acre tract
deeded to Christopher March 3, 1992, and (2) the 63.20-acre tract deeded to Christopher December
2, 1993, and January 20, 1994. 
            April 23, 2001. Christopher filed the divorce action now on appeal.
            July 2001. Kenneth sold two acres of timber from the 63.20-acre tract for $10,000.00, which
was paid to, and kept by, Kenneth.  

            The trial court's Nunc Pro Tunc Final Divorce Decree awarded to Christopher, as his sole and
separate property, the 63.20-acre tract and the 19.68-acre tract—on which is located the one-acre
marital residence.


 The decree made no mention of the 2.80-acre tract. The decree also does not
address how Christopher could be awarded property he had previously deeded to his father.
Standards for Property Division and Review
            In a divorce decree, a trial court must order the parties' estate divided "in a manner that the
court deems just and right, having due regard for the rights of each party and any children of the
marriage." Tex. Fam. Code Ann. § 7.001 (Vernon 1998). A trial court has broad discretion as to
the division of marital property and, absent clear abuse of that discretion, an appellate court will not
disturb a lower court's judgment. McClary v. Thompson, 65 S.W.3d 829, 833 (Tex. App.—Fort
Worth 2002, pet. denied). Although a trial court's discretion in dividing property is not without limit,
there arises an appellate presumption that the trial court properly exercised its discretion, shifting the
burden to the appellant "to show from the record that the division was so disproportionate, and thus
unjust and unfair, as to constitute an abuse," In re Marriage of Taylor, 992 S.W.2d 616, 620 (Tex.
App.—Texarkana 1999, no pet.), and that the error probably did cause the rendition of an improper
judgment, Smith v. Smith, 620 S.W.2d 619, 625 (Tex. Civ. App.—Dallas 1981, no writ).
            Despite the trial court's broad discretion in determining an appropriate division of the parties'
estate, the court is confined to dividing only the community property, Jacobs v. Jacobs, 687 S.W.2d
731, 733 (Tex. 1985), and any mischaracterization of a major asset of the parties' estate, therefore,
is  reversible  error  affecting  the  just  and  right  division  of  the  community  estate,  Reiss  v.
Reiss, No. 01-0251, 2003 Tex. LEXIS 88, at *9 (Tex. June 26, 2003); McClary, 65 S.W.3d at 833.
Whether the trial court abuses its discretion in dividing the property, . . . or commits
reversible error in defining what property is properly a part of the community estate
and therefore subject to division, . . . the principle to be applied is the same. Once
reversible error affecting the "just and right" division of the community estate is
found, the court of appeals must remand the entire community estate for a new
division.

Jacobs, 687 S.W.2d at 733. That is, on finding that an abuse of discretion has occurred, an appellate
court cannot substitute its judgment for the trial court's division of property, but must remand to the
lower court for a new division of the community estate.
            The question before this Court, then, is whether the trial court's characterization of the
disputed properties was legally correct and, if so, whether the court properly exercised its discretion
in dividing the parties' community estate. Following a bench trial, the court issued conclusions of
law, characterizing the 2.80-acre tract and the marital residence located on the one-acre tract as
community property. Although not binding on an appellate court, a trial court's legal conclusions
will be upheld on appeal unless erroneous as a matter of law. Smith v. Smith, 22 S.W.3d 140, 144
(Tex. App.—Houston [14th Dist.] 2000, no pet.). We note that the trial court's divorce decree is
silent as to the division of the 2.80 acres and that the court awarded to Christopher, as his separate
property, the marital residence and the underlying one-acre tract by failing to distinguish between
that property and the larger 19.68-acre tract from which it was surveyed—the court simply awarded
to Christopher all 19.68 acres. With this information in mind, we will address the parties'
contentions as to each of the property interests in question.
The 63.20 Acres of Timber
            While Tammy concedes the 63.20-acre tract was Christopher's separate property, she claims
community ownership, or special separate ownership, of the timber located on the property. Citing
McElwee v. McElwee, 911 S.W.2d 182 (Tex. App.—Houston [1st Dist.] 1995, writ denied), she
argues that, like crops, timber grown on separate property is community property subject to division
on divorce. Id. at 189. Tammy also makes the unsubstantiated claim her parents-in-law gifted the
timber to both Tammy and Christopher for their retirement and to help pay for their daughter's future
education. Though there is no document transferring the timber to Christopher and Tammy, she
insists that this alleged gift was in lieu of a more traditional Christmas present and that her claim is
supported by the lack of another, more satisfactory, explanation for the transfer of the 63.20 acres
in two conveyances—the first in the weeks before Christmas and the second in the weeks after.



            It is a fundamental principle that "any property or rights acquired by one of the spouses after
marriage by toil, talent, industry or other productive faculty belongs to the community estate." 
Vallone v. Vallone, 644 S.W.2d 455, 458 (Tex. 1982). This principle, however, does not apply to
the situation presented in this case because the record is clear the tract was a gift to Christopher and
was never impressed with a community character. At trial, Tammy, Christopher, and Kenneth all
agreed that Christopher's parents had contracted and paid for the timber to be planted years in
advance of the 1993 and 1994 conveyances and that Christopher did not expend any time, talent, or
labor with respect to the trees. Even if Christopher had made some effort in working to maintain or
increase the value of this property, the law nevertheless contemplates "that a spouse may expend a
reasonable amount of talent or labor in the management and preservation of his or her separate estate
without impressing a community character upon that estate." Id. The fact that the timber crop
increased in value during the marriage, without any effort by the parties, is simply not enough to
justify characterizing the property as part of the community estate. Before Christopher deeded the
63.20 acres to his father, all of it—acreage and unharvested timber—was Christopher's separate
property.
            Tammy also claims a community interest in $10,000.00 of timber sale proceeds collected by
Kenneth from a July 2001 sale of two acres of timber from the 63.20-acre tract. She argues that,
because the parties discussed the oil and gas development on the 63.20-acre tract before the divorce
and before Christopher deeded the acreage to Kenneth, and because the sale of the two acres of
timber arose from the oil and gas development, the proceeds were somehow impressed with a
community  nature.  We  have  already  determined  the  63.20-acre  tract's  timber  was 
Christopher's separate property before his conveyance to Kenneth. The subsequent sale of some of
that timber by Kenneth could not have given Tammy any rights in those proceeds.
The 2.80 Acres
            On October 19, 2000, the San Jacinto Sand Company conveyed a 2.80-acre tract of land to
Christopher, and it was still in his name as of the time of the dissolution of his marriage to Tammy. 
Simply choosing to ignore Tammy's claim that the tract acquired during their marriage should have
been characterized as community property, Christopher mistakenly states that no such tract of land
is either mentioned in the final divorce decree or in any of the trial court's findings of fact and
conclusions of law. It is true the divorce decree is silent as to the 2.80 acres; however, the court's
conclusions of law, filed the same day, expressly characterize the tract as community property. We
agree.
            It is generally presumed that property possessed by either spouse during or on dissolution of
marriage is community property, rebutted only by a spouse's clear and convincing demonstration of
the property's separate character. Tex. Fam. Code Ann. § 3.003 (Vernon 1998). At trial, the parties
offered nothing more than conflicting testimony as to the means whereby the property was acquired. 
Tammy simply testified Christopher bought the property as part of the community while Christopher
and Kenneth both testified the property was actually purchased by Kenneth for Christopher's benefit
despite the fact the deed from the San Jacinto Sand Company conveyed the property directly to
Christopher. Kenneth further testified he purchased the land for his son, designating it to be his sole
and separate property, and never intended to make any sort of gift out of it for the benefit of his
daughter-in-law. On cross-examination, however, both Christopher and Kenneth admitted they had
no documentation to support their claims the property was a gift from father to son. Additionally,
the deed language itself makes plain that the property was conveyed to Christopher for good,
valuable, and sufficient consideration paid by him to the San Jacinto Sand Company. The 2.80 acres
was community property.
The One-Acre Marital Residence
            As earlier stated, the divorce decree awarding the 19.68 acres to Christopher as his sole and
separate property fails to account for the court's characterization of the marital residence and the
underlying one acre as community property. Instead, the court simply awarded all 19.68 acres to
Christopher without considering the division of the one-acre tract surveyed out of the larger tract for
the benefit of the community estate and without considering Christopher's prior conveyance of the
19.68 acres to his father. The confusion appears to arise, in part, from the fact that the one acre was
not surveyed out of the 19.68 acres until after that larger tract was conveyed to Christopher as his
separate property on March 3, 1992.
            Particularly significant in addressing Tammy's claim that the one-acre marital residence was
community property is the contract of sale entered into on December 7, 1990. This contract, signed
by Tammy, Christopher, and Christopher's parents, provided that the parents would convey to
Tammy and Christopher the one-acre tract—along with the residence then being built—in exchange
for $80,000.00 to be paid in monthly installments. At the time of the contract, the property was
simply described as
[o]ne . . . acre in the form of a square, to be surveyed with the residence now being
built by [Christopher's parents] for [Tammy and Christopher] in the center of such
one acre out of the W.D. Thompson Headright Survey, Panola County, Texas, out of
a tract described in a deed dated May 19, 1977, from R.B. Smith, et ux, to Freda Lou
Morris, . . . together with the right of ingress and egress over and across the above
described tract of land." 

            Although the property's description is vague, the parties do not dispute that it is located on
the 19.68-acre tract and that it was later surveyed in conjunction with the parties' home equity loan. 
Discounting the community interest created by the December 7, 1990, contract for sale, however,
Christopher contends the March 3, 1992, conveyance of the entire 19.68 acres establishes a prima
facie case for the property's separate character, rebutting the community presumption. Christopher
seems to argue that, because his parents paid, either directly or indirectly, for the construction of the
marital residence, and because his father testified he never looked to anyone other than his son for
satisfaction on the contract for sale, they did not intend to convey any interest in the property to their
daughter-in-law.


 
            The characterization of most forms of property, including real estate, is determined by the
property's character at the inception of the parties' title, Barnett v. Barnett, 67 S.W.3d 107, 111 (Tex.
2001), occurring when a party first has rights in the property, Smith, 22 S.W.3d at 145 (citing Strong
v. Garrett, 224 S.W.2d 471, 474 (Tex. 1949)). "When real property is acquired under a contract for
deed or installment contract," as in the present case, "the inception of title relates back to the time
the contract was executed, not the time when legal title is conveyed." Wilkerson v. Wilkerson, 992
S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.). This means the one-acre tract was impressed
with community character on December 7, 1990, when the parties entered into the contract for sale,
giving the parties the right to obtain a survey of one acre around the residence. The subsequent
conveyance of the entire 19.68 acres as Christopher's separate property could not have operated to
alter those rights of the community. Regardless of the language of the March 3, 1992, deed,
therefore, Christopher's parents conveyed 19.68 acres, one acre of which was community property
subject to Tammy's earlier established interest. Christopher's subsequent deed of the 19.68 acres to
his father could not act to divest the community of its interest in the one acre and the residence
thereon. It was and remains community property.
The Shop Near the Residence
            In addition to her claim the marital residence and the underlying one acre should have been
included in the community estate, Tammy contends a nearby shop building should also have been
included in the community estate or, if found to be Christopher's separate property, the community
estate should have been reimbursed for enhancing its value. We conclude the shop was Christopher's
separate property and no related community reimbursement right was proven.
            Any improvements made on separate property—such as the construction of the shop on
Christopher's separate property—are also considered separate property, because the property's
character does not change despite the use of community funds to improve the property. In re 
 
Marriage of Morris, 12 S.W.3d 877, 881–82 (Tex. App.—Texarkana 2000, no pet.). Therefore, the
shop continued to be Christopher's separate property.
            A party's community reimbursement claim is purely equitable and obtains only when the
separate estate of one spouse is in some way improved by the community estate. Vallone, 644
S.W.2d at 458. "The party claiming the right of reimbursement has the burden of pleading and
proving that the expenditures and improvements were made and that they are reimbursable." Id. at
459.
            Although the parties agree that the shop was built during the parties' marriage and that it is
located on Christopher's separate property, they disagree about the funds used to construct it. 
Tammy testified that Christopher and Kenneth built the shop in partnership, sharing the construction
costs, while Christopher and Kenneth both testified that the shop was actually purchased by Kenneth
for Christopher's benefit. Tammy's only testimony about the amount of her claim is limited to the
tax appraisal value of the shop, not the amount of any community funds used in its construction. 
Because Tammy provided no evidence of the amount of community funds, if any, used in building
the shop,


 and recognizing that a trial court's discretion in evaluating a claim for reimbursement is
as broad as the discretion exercised by the trial court in making a just and right division of the
marital estate, we conclude the court did not abuse its discretion in denying reimbursement to the
community estate for the shop building. See Morris, 12 S.W.3d at 882 (citing Penick v. Penick, 783
S.W.2d 194, 198 (Tex. 1988)).
Conclusion
Having determined that the 2.80-acre tract and the marital residence and its one-acre tract are
community property, we reverse and remand the portion of the trial court's judgment dividing the
parties' community property for a just and right division consistent with this opinion. We otherwise
affirm the trial court's disposition of the parties' separate property as listed in the judgment.
 
                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          November 12, 2003
Date Decided:             December 23, 2003