



## MEMORANDUM OPINION

No. 04-10-00832-CV

Javier **MORA**,
Appellant

v.

Anna G. **MORA**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2001-CI-00776
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Catherine Stone, Chief Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  May 16, 2012

AFFIRMED

The appeal arises from a divorce proceeding involving Javier Mora and Anna Mora.  The

only two issues on which Javier presents argument in his brief are whether the trial court: (1)

erred in refusing to enforce the parties' marital agreement pursuant to section 4.102 of the Texas

Family Code; and (2) abused its discretion in admitting testimony of an expert witness regarding

the value of Javier's business.[1]  We overrule these arguments and affirm the trial court's judgment.

AGREEMENT TO PARTITION OR EXCHANGE COMMUNITY PROPERTY

In the first argument briefed by Javier, he contends the trial court erred in refusing to enforce the parties' marital agreement signed on or about June 6, 2003.  Javier argues the agreement was enforceable under section 4.102 of the Texas Family Code as a partition agreement which, unlike an agreement incident to a divorce, does not require trial court approval.

Anna responds that Javier failed to raise his contention that the agreement was enforceable under section 4.012 before the trial court.  We agree.  "Parties are restricted on appeal to the theory on which the case was tried."  *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex. 1978); *McClary v. Thompson*, 65 S.W.3d 829, 836 n. 3 (Tex. App.—Fort Worth 2002, pet. denied).  Because Javier did not argue before the trial court that the agreement was enforceable pursuant to section 4.102 of the Texas Family Code, he has waived this complaint.  *Davis*, 572 S.W.2d at 662; *McClary*, 65 S.W.3d at 836 n.3.

Even if we considered Javier's argument, however, we would overrule his contention.  Section 4.102 permits spouses to partition or exchange between themselves all or part of their community property.  TEX. FAM. CODE ANN. § 4.102 (West 2006); *see also id.* at § 4.104 (requiring partition agreement to be in writing and signed by the parties).  When construing martial property agreements, however, courts construe agreements narrowly in favor of the community estate.  *McClary*, 65 S.W.3d at 837.  To be enforceable as a partition agreement, the

---

[1] Although Javier lists four issues in his brief, he failed to present argument, citation of authority, or a jurisprudential framework for evaluating any issues other than those referenced above.  Accordingly, the other listed issues are inadequately briefed and therefore waived.  *See Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.).

agreement must make a specific reference to partition or contain language that a partition division was intended. *See Maples v. Nimitz*, 615 S.W.2d 690, 695 (Tex. 1981); *Byrnes v. Byrnes*, 19 S.W.3d 556, 559 (Tex. App.—Fort Worth 2000, no pet.); *McBride v. McBride*, 797 S.W.2d 689, 692 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Instead of an agreement to partition property, the agreement in the instant case appears to be an agreement to characterize property as community property or separate property, which is not the type of agreement contemplated by section 4.102.[2] Because the agreement does not make a specific reference to partition or otherwise indicate a partition of community property was intended, the agreement is not enforceable under section 4.102.[3] Javier's first argument is overruled.

### EXPERT TESTIMONY

In his second argument, Javier contends the trial court abused its discretion in allowing Kimberly Ford to testify regarding the net asset value of Mora Roof and Trimming, Inc., a business run by Javier throughout the parties' marriage. Javier argues Ford was qualified only as a tax expert and not as a business valuation expert. Javier also argues Ford should not have been permitted to testify regarding the business's net asset value based on the business's 2009 balance sheet without reviewing other business records. Javier further argues Ford's opinion regarding

---

[2] The agreement states, in pertinent part:

   Petitioner and Respondent, both are in possession of the residence located at 6106 Ridge Brook, San Antonio, TX.

   Petitioner and Respondent agree that both hold an equal community property interest in the residence and the automobile 2002 Chevrolet Avalanche.

   Petitioner and Respondent agree that all other personal and real property, either separate property or community property of JAVIER MORA (the "Mora Property"), is characterized as separate property of JAVIER MORA, and shall be held and owned by JAVIER MORA. The Mora Property includes but is not limited to, his 2001 Chevrolet Suburban, his businesses including MORA TRIM & ROOFING, INC., the real property located in Helotes, Texas, and all other vehicles and bank accounts in his name.

[3] We note that Javier attempts to argue in his reply brief that the agreement is enforceable under Rule 11. Javier is not, however, permitted to raise new issues in his reply brief that were not raised in his appellant's brief. *See Quick v. Plastic Solutions of Tex., Inc.*, 270 S.W.3d 173, 186 (Tex. App.—El Paso 2008, no pet.); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied). Nowhere in appellant's brief is there any argument that the agreement in question is enforceable under Rule 11. Accordingly, we need not address that issue.

the net asset value was improper because Ford failed to segregate Javier's personal goodwill from the commercial goodwill of the business.

A trial court's ruling on the admissibility of expert testimony is reviewed under an abuse of discretion standard. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). A trial court abuses its discretion when its ruling is arbitrary, unreasonable or without reference to guiding rules and principles. *Id.*

Ford testified she had been a certified public accountant for twenty-five years. Ford testified that when a true business valuation is to be undertaken, she requests assistance from another accountant who is an expert in business valuations. Ford also testified, however, that "[i]f a true business valuation is not needed and we can use some other sort of way to come up with a value, then I'll do that."

Ford testified insufficient information was provided by Javier to conduct a full business valuation. The trial court previously had heard extensive argument from the attorneys and testimony from other witnesses regarding the difficulty Anna's attorneys had in obtaining discovery and information regarding Mora Trim and Roofing. Ford testified the 2009 balance sheet did not contain accounts receivable, inventory, or trade payable information, and no information was provided by Javier in response to a request for that information. Therefore, in order to calculate a net asset value, Ford testified she used industry standards for comparable businesses to estimate those numbers.

With regard to the business's tax returns, Ford explained the reasons the information contained in the returns were questionable, particularly with regard to the salary paid to Javier and the absence of any reported cash transactions. Moreover, Ford testified the bank records showed an extraordinary number of personal expenses paid by the business. This testimony was

consistent with Javier's testimony that the business had paid expenses pertaining to all of the following: house payments, personal car payments, child support, children's tutoring, groceries, movies, trips, and time-share expenses. Moreover, evidence was presented that Javier routinely took cash from the business for personal expenditures.

Ford testified she had undertaken similar net asset value analyses based on similar balance sheet and industry standard information in about ten or fifteen other cases. With regard to goodwill, Ford explained a net asset value analysis does not include goodwill. Rather, the analysis was based on the value of the business's assets estimated from the 2009 balance sheet and industry standard information where the business's actual information was not provided. Ford testified net asset value is the most conservative number in a valuation method. In clarifying the testimony regarding Ford's valuation method, the following exchange occurred between Ford and the trial judge:

> THE COURT: Okay. Mrs. Ford, so you're submitting to this court that based on your tax experience and the amount — or the documents that you were able to review that you can give — that you're able to give an opinion on what — what benefit or what assets or what value Mora and Trim would have, the company would have.
> THE WITNESS: Yes. On what we believe that the — that the pro forma balance sheet that was provided as an exhibit is as close as we can get to the net asset value of the company.
> THE COURT: With what you had, would the other person in your firm who does the official business evaluation, would that person be able to provide any different opinion because of what we have?
> THE WITNESS: No.

Ford then testified to the net asset value of the business based on her analysis. Javier did not present any expert testimony to establish that the method used by Ford was an improper method for valuing businesses or that her analysis was unreliable.

Based on the testimony in the record regarding the parties' discovery disputes and the information made available and based on Ford's experience as an accountant and her prior use of

the net asset value method for valuing businesses, we cannot conclude the trial court abused its discretion in admitting Ford's testimony. Javier's second argument is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Marialyn Barnard, Justice