

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00349-CV

_____

ELVIS MORIN, Appellant

V.

TAMMY MORIN, Appellee

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-686880-20

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Elvis Morin appeals from a property division incident to a divorce. In one issue, Elvis contends that the trial court abused its discretion by failing to divide the marital property according to the terms of his premarital agreement with Appellee Tammy Morin. We affirm the trial court's judgment.

## I. Background

The only point of contention in the divorce proceedings below concerned each party's interest in the marital home in Mansfield, Texas, and a pickup purchased during the marriage. The dispute centered around one provision of the parties' premarital agreement that was drafted by Elvis using a form that he had downloaded from the internet. Elvis and Tammy executed the agreement two days before their wedding in 2010.

Partly typed and partly handwritten by Elvis, the agreement contains four property-characterization provisions. First, the agreement establishes that "all separate property each [person] brings into the marriage will remain each person's separate property" (the Separate Property Provision). Next, the Acquired Property Provision states, "All property acquired by each during the marriage shall be deemed their property." [Capitalization altered.][1] The agreement then states that "Elvis'[s] 401K Retirement Account (as well as any income, profits, Deferred Retirement Option

---

[1]Elvis wrote "THeir" into this sentence by hand.

(D.R.O.P.) or any other benefits of any kind accruing from it) will remain Elvis'[s] separate property" (the 401K Provision). Finally, the agreement states that "Tammy's personal income or retirement will remain her separate property" (the Personal Income Provision). It is the meaning of the second provision—the Acquired Property Provision—that the parties dispute.

Elvis bought the Mansfield house in 2014, four years after the couple was married. They lived there until Tammy moved out in 2020. The deed lists only Elvis as the owner, but the deed of trust was signed by both parties. Elvis purportedly bought the Mansfield house with funds received from the sale of a house in Hurst, Texas, that he had bought with his separate property in 2006. The couple lived in the Hurst house from 2006 to 2014, and Tammy claimed that she had paid for improvements to both houses.

During their marriage, Elvis and Tammy both worked. In addition to separately establishing and maintaining various individual retirement and investment accounts before the marriage, they also kept separate bank accounts during the marriage. Elvis and Tammy also bought various cars during the marriage, including a pickup that Elvis paid for and claimed as his separate property. Tammy asserted that it was community property because it was bought with "a refi cash-out . . . from the house," on which she had paid for improvements. Although Elvis acknowledged that Tammy had paid to maintain both houses, he asserted that she had also benefited from living in them and that "she [had] never contributed [to] or made a single house payment."

3

According to Elvis, he believed that the Mansfield house and the pickup were his separate property under the premarital agreement's Acquired Property Provision because they were acquired by him during the marriage. Tammy, on the other hand, said that she thought that the Acquired Property Provision applied only to "[t]he physical furniture and stuff" or "tangible items."

In the trial court's final decree, Tammy was awarded the pickup and a share of the Mansfield house. In its findings of fact and conclusions of law, the trial court determined that the premarital agreement was valid but "replete with ambiguity and uncertainty." The trial court interpreted *their* in the Acquired Property Provision as "a plural possessive form of the personal pronoun 'they,' essentially meaning belonging to or possessed by 'them,'" noting that "'THeir property' [wa]s not specifically defined for characterization purposes." Concluding that the premarital agreement was vague and ambiguous, the trial court ruled that the community-property presumption controlled and that the premarital agreement should be construed against Elvis as the drafter. This appeal followed.

## II. Discussion

In his sole issue, Elvis contends that the trial court misinterpreted the premarital agreement and erroneously divested him of his separate property. He maintains that the agreement unambiguously made all property acquired during the marriage the separate property of the acquiring spouse. Alternatively, he argues that if the agreement

4

is ambiguous, the evidence was sufficient to show that the parties did not intend to create any community property during the marriage.

## A. Standard of Review

We review a trial court's property division for an abuse of discretion. *See, e.g.,* *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex. App.—Fort Worth 2010, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Although a trial court does not abuse its discretion by deciding based on conflicting evidence, sufficient evidence must nevertheless support the decision; therefore, the traditional sufficiency-review standards are relevant to our review. *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *3 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *In re S.C.*, No. 02-17-00377-CV, 2018 WL 5289370, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.).

When, as here, the trial court files findings of fact and conclusions of law, the fact-findings have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's fact-findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Id.* A trial court's legal conclusions do not bind us, and

we review them de novo. *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.). The interpretation of an unambiguous contract is a question of law. *In re Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 122 (Tex. 2018) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999)).

## B. Analysis

Elvis contends that the Acquired Property Provision unambiguously uses *their* as a singular pronoun for the singular, gender-neutral antecedent *each*, making all property acquired during the marriage the separate property of the acquiring spouse. He claims that this is consistent with the parties' intent to avoid creating any community property during the marriage. Tammy disagrees, asserting that the agreement is ambiguous. Noting that no other provision uses *their* to refer to a party's separate property, she asserts that *their* is properly interpreted as a plural possessive pronoun.

"Generally, whether property is separate or community is determined by its character at inception . . . ." *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." Tex. Fam. Code Ann. § 3.003(a). "Community property consists of the property, other than separate property, acquired by either spouse during marriage." *Id.* § 3.002. Thus, "any spouse's personal income is community property." *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App.—Fort Worth 2002, pet. denied). Likewise, "when separate property produces income, and that income is acquired by a spouse during marriage, it is community property." *Id.* Consequently, although the

6

pre-marriage balance of an individual retirement account is considered the spouse's separate property, benefits accruing to such an account during the marriage are community property. *Id.* at 835. But parties may contract to alter their rights and obligations "in any of the property of either or both of them whenever and wherever acquired or located." Tex. Fam. Code Ann. § 4.003(a)(1).

We generally interpret premarital agreements "like other written contracts." *Marriage of I.C. & Q.C.*, 551 S.W.3d at 122 (quoting *Williams v. Williams*, 246 S.W.3d 207, 210 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). When doing so, our primary concern is to ascertain the parties' true intentions as expressed in the instrument. *Id.* "'Objective manifestations of intent control,' not the subjective intent of the parties." *Id.* (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763–64 (Tex. 2018)). When discerning the parties' intent, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012); *see In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding). But unlike other contracts, premarital agreements are narrowly construed in favor of the community estate. *Williams*, 246 S.W.3d at 211; *McClary*, 65 S.W.3d at 837.

"When construing a contract, the terms are typically given 'their plain, ordinary, and generally accepted meaning.'" *Davenport*, 522 S.W.3d at 456–57 (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). "Courts may look to

7

dictionaries to discern the meaning of a commonly used term that the contract does not define." *Id.* at 457. If a contract's language can be given a certain or definite legal meaning or interpretation, the contract is not ambiguous, and we will construe it as a matter of law. *Id.* at 456; *El Paso Field Servs.*, 389 S.W.3d at 806. But, if contract languge "is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *El Paso Field Servs.*, 389 S.W.3d at 806 (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).

Elvis cites two legal style guides to argue that "[b]oth 'each' and 'their' are gender neutral; and 'their' can be used as a singular pronoun when it has an indefinite singular antecedent (such as 'each')." In other words, he reads "[a]ll property acquired by each during the marriage shall be deemed *'their'* property," to mean "[a]ll property acquired by each during the marriage shall be deemed *his or her* property." With this reading, he concludes that the Acquired Property Provision converted all property acquired during the marriage into the separate property of the acquiring spouse.

But according to these style guides, this usage is a recent development in spoken and informal communication that is still not commonly accepted in formal writing. *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 11.10(g) (4th ed. 2018) ("As an antecedent, a clearly singular indefinite pronoun (*another*, *each*, *either*, *every*, *much*, *neither*, *nobody*, *no one*, *nothing*, *one*, *other*, and combination forms) takes a singular pronoun. . . . In recent years, a shift has occurred with *anybody*, *anyone*, *everybody*, *everyone*, *nobody*, and *no*

8

*one*: in informal usage especially, these have come to be matched with *they*, *them*, *their*, and *themselves*."), (o) (describing use of *they* as a singular pronoun as "only recently gain[ing] ground in more formal writing"); Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 70 (2016) (noting that use of *they* as a singular pronoun is accepted in speech and informal writing but "is still considered nonstandard in formal writing" and suggesting "the traditional, formal *he or she*, *him or her*, *his or her*, *himself or herself*" to avoid third-person plural pronouns).

Notably, the edition of The Redbook available when the parties executed the agreement in 2010 expressly admonished against using third-person plural pronouns as singular pronouns. *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 10.10(g) (2d ed. 2006) ("As an antecedent, a clearly singular indefinite pronoun (*another*, *each*, *either*, *every*, *much*, *neither*, *nobody*, *no one*, *nothing*, *one*, *other*, and combination forms) takes a singular pronoun."), (o) ("In formal writing, do not use *they*, *them*, or *their* as a gender-neutral third-person singular."). Thus, contrary to Elvis's assertion, *their* was not commonly accepted as a singular pronoun when the parties executed the agreement in 2010.

Language from other provisions in the agreement further belies Elvis's argument. Specifically, the trial court noted in its findings that both the Separate Property Provision and the Acquired Property Provision respectively referred to property that *each* party brought into or acquired during the marriage. Yet, unlike the Acquired Property Provision, the Separate Property Provision did not refer to the property as

9

"their property" but as "each person's separate property." The 401K Provision and the Personal Income Provision likewise refer to "Elvis'[s] separate property" and "her separate property." In other words, every other property-characterization provision specifically identifies the separate property's owner. Only the Acquired Property Provision uses the term *their*. This further supports the conclusion that the parties intended this provision to operate differently. *See Marriage of I.C. & Q.C.*, 551 S.W.3d at 122 (holding that "[o]bjective manifestations of intent control").

Moreover, Elvis's interpretation would render parts of the 401K Provision and Personal Income Provision superfluous. Elvis admits as much on appeal by arguing that the agreement's lack of "reciprocal provisions" for income produced by Tammy's retirement account "is immaterial because [the Acquired Property Provision] would include retirement accounts, income, and earnings, etc." We must avoid such a result if we can. *See Ewing Constr. Co., Inc. v. Amerisure Ins.*, 420 S.W.3d 30, 37 (Tex. 2014) ("[I]nterpretations of contracts as a whole are favored so that none of the language in them is rendered surplusage."); *El Paso Field Servs.*, 389 S.W.3d at 805.

Tammy's position is likewise problematic. She contends that the trial court properly concluded that the Acquired Property Provision used *their* as a plural possessive, arguing that "this could easily have been interpreted [as] an agreement to specify certain property as separate property and later acquired property to be community property." She asserts that the 401K Provision and the Personal Income Provision "support the creation of both separate and community property." But some

of that property was not separate to begin with, *see McClary*, 65 S.W.3d at 834–35, and Tammy's interpretation places these provisions in partial conflict with the Acquired Property Provision.

In such instances, the Texas Supreme Court has instructed us that the specific contract provision will control over the general one. *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023) (holding that a contract "is not necessarily ambiguous simply because some sections arguably conflict" and that because "no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions, a specific contract provision controls over a general one"). Thus, here, the 401K Provision and the Personal Income Provision would be treated as exceptions to the Acquired Property Provision and would operate to convert Tammy's personal income and individual-retirement-account benefits received during the marriage into separate property. The trial court concluded as much, and we agree.

But the trial court's conclusion was based on its finding ambiguity, and after applying the pertinent rules of contract interpretation, we disagree with the trial court that the Acquired Property Provision is ambiguous. Instead, we conclude that the premarital agreement unambiguously makes all property acquired by either Elvis or Tammy during the marriage community property while carving out an exception for Tammy's personal income and individual-retirement-account benefits received during the marriage. But even if the agreement were ambiguous, we would construe it against

11

Elvis as the drafter and arrive at the same conclusion. *See Gonzalez v. Mission Am. Ins.*, 795 S.W.2d 734, 737 (Tex. 1990). Accordingly, we overrule Elvis's sole issue.

## III. Conclusion

Having overruled Elvis's sole issue, we affirm the trial court's final decree of divorce.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: June 6, 2024