# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 16-0770

═══════════════

IN THE MATTER OF THE MARRIAGE OF I.C. AND Q.C.
AND IN THE INTEREST OF S.C. AND K.C., CHILDREN

═══════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

═══════════════

**Argued February 8, 2018**

JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE LEHRMANN filed a concurring opinion.

In this divorce case, the wife sought rescission of a premarital agreement. The trial court found that the wife's attempt to rescind the premarital agreement triggered a clause in the agreement under which she lost a $5 million payment otherwise due to her. The court of appeals affirmed. We affirm.

## I. Background

Rebecca and James Dondero married in 2005. Prior to their marriage, they entered into an "Agreement in Contemplation of Marriage" ("Agreement"). Under section 13(h) of the Agreement, James would make a lump-sum cash payment to Rebecca upon the entry of a divorce decree. The Agreement also contained what the parties call a "no-contest" or "forfeiture" clause, under which Rebecca could lose her contractual right to the lump-sum payment. Section 31 states:

If either party brings an action or other proceeding to enforce this Agreement or to enforce any judgment, decree, or order made by a court in connection with this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and other necessary costs from the other party. If either party seeks to invalidate some or all of this Agreement, or seeks to recover property in a manner at variance with this Agreement, then such party shall be liable to the other party for all reasonable and necessary attorney's fees and costs incurred by such other party in defending this [sic] or her rights under this Agreement. In addition, if BECKY seeks to invalidate some or all of this Agreement, or seeks to recover property in a manner at variance with this Agreement, then BECKY shall forfeit the cash payment set forth in Section 13(h).

James filed for divorce in 2011. Rebecca filed a counter-petition seeking to enforce the Agreement. Because James fell behind in certain periodic payment obligations required by the Agreement, Rebecca petitioned the trial court to compel those payments. The court ordered James to pay the back-due amounts. Thereafter, in 2012, Rebecca filed an amended counter-petition, asserting claims for breach of contract, anticipatory breach, and breach of fiduciary duty. Her petition requested rescission of the Agreement "in the alternative" because of James's failure to pay and because "the agreement was marred with fraud." Rebecca continued to pursue rescission of the Agreement in several amended counter-petitions. She also moved for summary judgment on her breach-of-contract claim, arguing in part that she was entitled to rescission of the Agreement as a matter of law. She contended that "it is now Becky's option to elect to rescind the Agreement in its entirety," that "Becky is now free to treat the Agreement as extinguished," and that "Rescission works to avoid the contract and return the parties to their earlier positions as if no contract had existed." James responded with an amended divorce petition seeking a declaratory judgment that Rebecca's pursuit of rescission triggered section 31 of the Agreement, thereby forfeiting her section 13(h) cash payment. He moved for partial summary judgment on this point. Rebecca responded by reasserting her request for rescission as a remedy for James's breach of the

2

Agreement. As the dispute approached trial, Rebecca asserted several affirmative defenses. James moved for summary judgment on each. The court granted summary judgment in favor of James on most of Rebecca's affirmative defenses but denied summary judgment on the defenses of prior material breach and repudiation.

The first jury trial concluded in late 2013. The jury found that Rebecca sought to invalidate the Agreement in violation of section 31 but was excused because of James's prior material breach. James moved for a new trial, which the court granted in late 2014. James moved for summary judgment on Rebecca's previously upheld affirmative defenses of prior material breach and repudiation. This time, the trial court granted James's formerly denied motion and ordered that Rebecca's "affirmative defenses of prior material breach and repudiation are dismissed with prejudice."

In 2015, the trial court granted James's motion for summary judgment on his declaratory judgment claim. The court concluded that "(1) [Rebecca] sought to invalidate all or a part of the Agreement in Contemplation of Marriage (the 'Agreement'); (2) [Rebecca] sought to recover property in a manner at variance with the Agreement; and (3) [Rebecca] has forfeited any cash payment under Section 13(h) of the Agreement." Rebecca appealed. The court of appeals affirmed. ___ S.W.3d ___ (Tex. App.—Dallas 2016, pet. granted) (mem. op.). We granted Rebecca's petition for review.

## II. Analysis

"A declaratory judgment granted on a traditional motion for summary judgment is reviewed de novo." *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). This appeal turns primarily on interpretation of a contract, and "[g]enerally, in Texas, courts interpret

3

premarital agreements like other written contracts." *Williams v. Williams*, 246 S.W.3d 207, 210 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing as an example *Beck v. Beck*, 814 S.W.2d 745, 748–49 (Tex. 1991), which uses the terms "premarital agreement" and "contract" interchangeably). The interpretation of an unambiguous contract is a question of law for the court. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999).

Under section 31 of the Agreement, Rebecca "shall forfeit" her cash payment if she "seeks to invalidate some or all of [the] Agreement," or if she "seeks to recover property in a manner at variance with [the] Agreement." Despite this clear contractual language, Rebecca asked the trial court to rescind the Agreement and return the parties to their pre-contractual positions. The trial court and the court of appeals correctly concluded that Rebecca's unsuccessful attempt at rescission triggered the Agreement's forfeiture clause, under which she lost her contractual entitlement to the lump-sum cash payment.

When interpreting a contract, our "primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument. Objective manifestations of intent control," not the subjective intent of the parties. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763–64 (Tex. 2018). Unless the contract indicates that the parties used a term in a technical or unusual sense, contractual terms are given their plain, ordinary, and generally accepted meaning. *Dynegy Midstream Servs. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

The Agreement states that James and Rebecca "inten[ded] and desire[d] that [the] Agreement [would] define the respective rights of each of them in the property of the other after their Marriage" if it ended in divorce. Had Rebecca succeeded in rescinding the Agreement, her

4

payments would instead have been determined by the Texas Family Code's provisions for a just and right division of the community property. This manner of property division would have been "at variance with" several provisions of the Agreement. Section 1 of the Agreement provided that there would be no community estate. Section 5 similarly provided that "[a]ny property that is acquired by either party during the Marriage, regardless of the source of the consideration exchanged for the property, will be owned only as separate property of the party in whose name the title is taken," and that property purchased in the names of both spouses shall be treated as jointly owned by the spouses. Section 7 waived any claim that commingling of property would cause it to lose its character as separate property. In sections 1(m) and 16, the parties agreed that Texas's community property laws shall not apply. Distribution under the Family Code would have been "at variance with" each of these provisions and with the Agreement's overall design to substitute certain payment amounts for the default legal rules of marital property division. *See generally* TEX. FAM. CODE §§ 3.001–.410 (regarding marital property rights and liabilities).

By seeking to rescind the Agreement, Rebecca sought what could have been a greater distribution of the marital estate under the Texas Family Code and related Texas common law than she would have received had the Agreement remained in place. She sought to undo the payment provisions of the Agreement that were designed and agreed to as an alternative to whatever a contested divorce would have otherwise yielded. Her repeated, and ultimately unsuccessful, requests for rescission of the Agreement were attempts to recover at variance with the property distribution contemplated by the Agreement and therefore triggered section 31, under which she forfeits the lump-sum payment.

Rebecca sought the creation of a community estate and her share of it, perhaps thinking that this distribution of the marital estate would exceed the payment she would have received under the Agreement. Indeed, she argued in a motion for reconsideration that she would have recovered "substantially more had the parties not entered into a premarital agreement." She likewise argued that rescission would result in "the existence of a marriage without a premarital agreement and the subsequent creation of a community estate." Section 1(h) of the Agreement states that there would be no equitable distribution of property. Yet Rebecca asked the court to rescind the Agreement and "to equitably divide the property accumulated during the marriage under the community property laws." She pursued this outcome through discovery, summary judgment motions, and trial. If these actions are not an attempt "to recover property in a manner at variance with [the] Agreement," it is difficult to imagine what is.[1]

Rebecca argues that her request for rescission "in the alternative" was not enough to trigger the forfeiture clause. We disagree. Rebecca went so far as to seek summary judgment on her entitlement to rescission; this "alternative" remedy was not a mere backup plan. In moving for summary judgment on rescission, Rebecca sought "to recover property in a manner at variance with [the] Agreement."

Rebecca asks us to adopt or imply a just-cause exception to the Agreement's forfeiture clause because she brought her rescission request "in good faith and upon probable cause" that James had already breached the Agreement. *See Calvery v. Calvery*, 55 S.W.2d 527, 530 (Tex.

---

[1] The forfeiture clause is also triggered if Rebecca "seeks to invalidate some or all of [the] Agreement." In seeking rescission, Rebecca asserted that the parties should be treated "as though no Agreement exists," which on its face appears to be an effort to invalidate the Agreement. However, Rebecca argues that she has never contended that the Agreement is invalid, and in fact has always argued that it is a valid, enforceable contract. Rather, she sought rescission solely as a remedy for James's repudiation. Because we hold that Rebecca triggered the forfeiture clause by seeking to recover property in a manner at variance with the Agreement, we need not address this argument.

1932) ("The great weight of authority sustains the rule that a forfeiture of rights under the terms of a will will not be enforced where the contest of the will was made in good faith and upon probable cause."). We decline to do so. The trial court ruled that James did not breach the Agreement. Rebecca did not appeal that ruling. We cannot find just cause for Rebecca's failure to abide by the no-contest clause based on a breach by James that the trial court found did not happen.

Rebecca argues that she had no choice but to seek rescission after James failed to make scheduled payments under the Agreement. But there were several options available under section 31 to remedy James's failure to pay, such as filing a breach-of-contract suit seeking monetary expectation damages, a petition for enforcement, or a motion for temporary orders. Indeed, Rebecca in fact took these very actions and was successful at persuading the trial court to order James to pay. Even after that, however, she persisted in seeking rescission of the Agreement. She did not have to seek that remedy, but she did. Having failed to achieve that result, she remains bound by the contractual consequences of her decision to "seek[] to recover property in a manner at variance with [the] Agreement." The parties could have agreed that James's failure to make a periodic payment would nullify the entire Agreement and result in property distribution under the normal rules. They did not. "We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996).

While the Family Code generally permits premarital agreements like the one at issue here, it also provides that an unconscionable agreement or one not entered into voluntarily is not enforceable. TEX. FAM. CODE § 4.006(a). Recognizing an additional just-cause or good-faith

exception to the enforcement of the Agreement, as Rebecca urges, would both judicially expand section 4.006 and run afoul of our longstanding preference to protect the freedom of contract by enforcing contracts as written. Texas has a "strong public policy favoring freedom of contract" that is "firmly embedded in our jurisprudence." *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016). We have repeatedly recognized that parties "shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts." *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007). We rarely find a contract unenforceable on public policy grounds. Premarital agreements are no exception. *See, e.g.*, *Beck*, 814 S.W.2d at 749 ("The legislature and the people of Texas have made the public policy determination that premarital agreements should be enforced. If we refuse to enforce [Husband's] and [Wife's] premarital agreement, we would thwart, rather than advance, our state's public policy enforcing these contracts.").

In addition, Texas law disfavors equitable exceptions to the enforcement of contracts as written. "Where a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648–49 (Tex. 2007). In this case, the Agreement provided Rebecca with regular monetary support, and she was separately promised a large sum of cash if she did not contest the Agreement. We find no sound basis for holding the Agreement unconscionable or otherwise against public policy. In sum, the Agreement as written is not unconscionable and should not be modified by court-manufactured exceptions.

Finally, Rebecca contends that the Agreement should be construed to avoid a forfeiture. *E.g.*, *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)

8

("Forfeitures are not favored in Texas, and contracts are construed to avoid them."). But the parties here expressly agreed to a forfeiture in the no-contest clause, which provides clear consequences if Rebecca seeks to invalidate the Agreement or recover at variance with it. Rebecca had no absolute right to the lump-sum payment. She had a conditional right premised on her compliance with the Agreement's no-contest clause. Application of a freely agreed-to and unambiguously worded no-contest clause is not the kind of "forfeiture" Texas law seeks to avoid. Both the trial court and the court of appeals correctly enforced the Agreement as written.

For these reasons, we hold that by unsuccessfully seeking rescission of the Agreement and pursuing that remedy throughout the litigation, Rebecca "[sought] to recover property in a manner at variance with [the] Agreement." She therefore lost her contractual right to the lump-sum payment pursuant to section 31 of the Agreement. The judgment of the court of appeals is affirmed.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** June 29, 2018

9