**Opinion issued December 13, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00290-CV

———————————

**TOM KOZERA, Appellant**

**V.**

**MAJA VELEMIR, Appellee**

---

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-11107**

---

## MEMORANDUM OPINION

Appellant, Tom Kozera, challenges the trial court's final decree, entered after a bench trial, in the suit for divorce brought against him by appellee, Maja Velemir. Kozera presents the following eleven issues for our review: "Perjury During Testimony by Appellee, Maja Velemir (Petitioner), During Testimony";

"Judgment on Pension and Retirement Unequitable and Reaches Beyond Date of Rendition"; "Prenuptial (Premarital) Agreement Enforcement and Unconscionability"; "Incorrect Transcription of Appellee's, Maja Velemir (Petitioner), Direct Questioning Testimony by Walter N. Johnson, Deputy Court Reporter"; "Usage of January 1, 2017 as the Start Date for Child Support Withholding and Monthly Instead of Bi-Weekly Payment Schedule"; "Trial Court's Willful Ignorance of the Agreed Temporary Orders in Favor o[f] Appellee"; "Incorrect and Baseless Finding of Fact Regarding Continuation of Marriage and Pilfering of Assets Against Temporary Restraining Order in Effect"; "Delays in Process"; "Formal Bill of Exceptions Impossible to File"; "Recordings of Trial and Hearings Waived and Prohibited"; "Formal Bill of Exception Impossible to File"; and "Nonsense Responses to Motions Filed By Appellee."

We affirm.

## Background

In her second amended petition, Velemir sought a divorce from Kozera, alleging that their "marriage ha[d] become insupportable because of discord or conflict of personalities," which had "destroy[ed] the legitimate ends of the marriage relationship and prevent[ed] any reasonable expectation of reconciliation." She requested sole managing conservatorship of their minor son; invalidation of the parties' premarital agreement on the grounds that it was entered

2

into involuntarily and was unconscionable; division of the community property, awarding her a "disproportionate share of the parties' estate"; confirmation of her separate property and estate; "post[-]divorce maintenance for a reasonable period"; and attorney's fees, expenses, and costs.

In his second amended counter-petition, Kozera, proceeding pro se, requested joint managing conservatorship of their minor son; a decrease in his child support payments; reimbursement for temporary spousal support that was prohibited by the parties' premarital agreement; reimbursement for mediation expenses due to the "grossly unequal time that [Velemir] spent with the mediator"; reimbursement for "genetic paternity testing fees"; reimbursement for penalties incurred as a result of Velemir not visiting a physician yearly as required by the parties' health insurance; removal of the parties' names from the title to their respective automobiles; Velemir's cooperation in obtaining Serbian and European Union citizenship for their minor son; reimbursement from the community estate for spousal support, mediation, genetic paternity testing, and health insurance penalties; and attorneys' fees. And he alleged that Velemir stole his tablet, cellular telephone, laptop computer, and foreign currency from a shared safe; breached the parties' agreement to abstain from incurring personal loans during the divorce proceedings; and breached the parties' premarital agreement by not exchanging yearly tax information with him.

3

At trial, Velemir testified that she met Kozera in 2006 on a cruise ship, where she was working in the gift shop. After visiting Velemir twice at her home in Serbia, Kozera, who is originally from Poland, attempted to arrange for her to visit him in New York City, where he lived at the time. Subsequently, although her application for a guest visa was rejected, she eventually obtained a fiancé visa, which required that she and Kozera marry within 90 days. And they were married on June 22, 2007, approximately one week before Velemir's fiancé visa expired.

On the morning of their wedding, Kozera presented Velemir with a premarital agreement, which she signed at their apartment. No one else was present at the time, and she did not remember being present when it was notarized. Velemir explained that she did not participate in drafting the agreement and had not seen it before she signed it. Moreover, she did not receive or submit to Kozera any financial statements concerning the assets covered by the agreement. However, Velemir did, at the time, have some awareness of Kozera's assets because he had to present proof that he could support her in order to obtain her fiancé visa. They did not discuss the agreement, and Velemir did not consult with a lawyer before signing it. She further explained that she could not afford a lawyer because, at the time, she was completely financially dependent on Kozera, and he did not offer to pay for a lawyer to advise her about the premarital agreement.

4

Velemir further testified that the premarital agreement was written and presented to her in English, and it was not translated into her native language before she signed it. Although she spoke some English and understood the general concept that she was entering into an agreement regarding ownership of property after marriage, she did not fully understand the terms of the premarital agreement. And Velemir explained that she felt pressured to enter into the agreement because Kozera would not marry her otherwise and her fiancé visa was about to expire.

After their son was born in 2011, Velemir stopped working outside of the home to raise him. However, each time that she returned to Serbia, her mother would give her money in Euros to bring back with her. Velemir and Kozera kept this money in a safe, used some of it, and returned the rest to Velemir's mother who later needed financial assistance with her property taxes. Velemir, who was financially dependent on Kozera during this time, explained that he put approximately $200 per month aside in an account for their son, but spent an excessive amount of money on firearms and liquor. And Kozera went out drinking or to dinner with friends four to five nights during the week. Velemir and Kozera fought frequently, and he often threatened her with divorce. In March 2014, after returning from a trip to Serbia, Velemir filed for divorce. And she noted that Kozera has not attempted to visit or otherwise contact their son during the pendency of the divorce proceedings.

Kozera testified that Velemir had full knowledge of his financial assets because he had to make extensive disclosures as part of her visa application to establish that he would be able to support her when she moved to the United States. He explained that they drafted the premarital agreement together, Velemir spoke English very well at the time as she was required to do so for her job on the cruise ship, and, regardless, the agreement was written in plain terms so that lay people could understand it. Thus, accordingly to Kozera, neither party consulted with a lawyer when executing the premarital agreement. And contrary to Velemir's testimony, Kozera testified that that they signed the premarital agreement at a pharmacy in front of a notary public as opposed to at their apartment. Kozera also contradicted Velemir's testimony regarding his drinking and spending habits. However, he did stipulate to Velemir becoming the sole managing conservator of their son.

Robert Miller testified that he witnessed the parties sign their premarital agreement at a pharmacy before a notary public. He noted that Velemir spoke English very well at the time, and she even recommended a book to him on one occasion.

On January 6, 2017, Kozera filed a Motion for Sanctions Based on Perjured Testimony, asserting that Velemir should be sanctioned and found in contempt of court for committing aggravated perjury during her court testimony about, among

other things, the validity of the premarital agreement and his alleged alcohol abuse. In her response, Velemir argued that "the sanctions requested . . . [were] not authorized by Texas Civil Practice & Remedies Code [§] 10.001, Texas Civil Practice & Remedies Code [§] 10.004, Texas Civil Practice & Remedies Code [§] 9.012, or Texas Rule of Civil Procedure 13." The trial court denied Kozera's motion for sanctions.

In its final divorce decree, the trial court ordered the parties divorced on the ground of insupportability. It granted Velemir sole managing conservatorship of their minor son, ordered Kozera to pay child support in the amount of $1,408.72 per month, invalidated the parties' premarital agreement, and divided their property. Further, the trial court issued Findings of Fact and Conclusions of Law in support of its final divorce decree. Specifically, it entered the following findings of fact regarding the parties' premarital agreement:

> 10. On the day of their marriage, MAJA VELEMIR and TOM KOZERA entered into a premarital agreement.

> 11. MAJA VELEMIR did not sign the premarital agreement voluntarily, MAJA VELEMIR, a non-U.S. citizen visiting on a temporary Visa, was shortly to return to her home country if not married.

> 12. The premarital agreement was unconscionable when signed.

> 13. Before signing the premarital agreement, MAJA VELEMIR was not provided a fair and reasonable disclosure of the property or financial obligations of TOM KOZERA. Disclosure

7

of . . . TOM KOZERA's then existing finances had been made to MAJA VELEMIR to some degree, but those disclosures were not full and complete and were not translated into her primary language.

14. Before signing the premarital agreement, MAJA VELEMIR did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of TOM KOZERA beyond the disclosures provided.

15. Before signing the premarital agreement, MAJA VELEMIR did not have, and reasonably could not have had, adequate knowledge of the property and financial obligations of TOM KOZERA. Though . . . MAJA VELEMIR understood some English, English was not her first or primary language at the time. The agreement was written in English and not translated. MAJA VELEMIR was not represented by counsel nor did TOM KOZERA offer to pay for MAJA VELEMIR to seek and to retain an attorney to review the agreement.

The trial court also entered the following conclusions of law regarding the premarital agreement:

11. The premarital agreement executed by [Velemir] and [Kozera] on June 22, 2007 is not a valid and enforceable agreement.

12. MAJA VELEMIR did not sign the premarital agreement voluntarily. The premarital agreement is unconscionable. As such, the court declines to enforce the premarital agreement.

Kozera subsequently filed a Motion for Partial New Trial, which the trial court denied.

**Standard of Review**

Most of the appealable issues in a family-law case, including property division incident to divorce, are evaluated for an abuse of discretion. *Reddick v.*

8

*Reddick*, 450 S.W.3d 182, 187 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied).  A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles.  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).  When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court.  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance.  *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  And as the factfinder in a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.  *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## Sanctions for Alleged Perjury

In his first issue, Kozera asserts that the trial court erred in denying his Motion For Sanctions Based On Perjured Testimony.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i).  Kozera dedicates nearly forty pages of his brief to this issue. He references several exhibits and certain testimony from the record to support his

assertion that Velemir perjured herself during her testimony at trial. He also provides a list of sources, without accompanying substantive analysis, that he asserts support his argument that she committed perjury. However, nowhere in this section does Kozera explain how the authority he cites applies to the facts to demonstrate that the trial court abused its discretion in denying his motion for sanctions. *See Encinas v. Jackson*, 553 S.W.3d 723, 728 (Tex. App.—El Paso 2018, no pet.) (appellant waived argument by "provid[ing] no citation to authority, nor appl[ying] applicable law to the facts of the case in support of her second issue"); *Marin Real Estate Ptrs. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.) ("A failure to provide substantive analysis of an issue waives the complaint."). Accordingly, we hold that Kozera has waived his first issue

We recognize that Kozera is not an attorney and is representing himself pro se in this appeal. However, a pro se litigant is "not exempt from the rules of procedure." *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005). Kozera has the burden to present and argue his appellate issues. *See Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("A pro se litigant is required to properly present [his] case on appeal, just as [he] is required to properly present h[is] case to the trial court."). This Court cannot "perform an independent review of the record and applicable law to

10

determine whether there was error. [] Were we to do so, even on behalf of a *pro se* appellant, we would be abandoning our role as neutral adjudicators and become an advocate for that party." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.); *accord Thomas v. Park at Sutton Oaks*, No. 04-17-00267-CV, 2018 WL 340133, at *1 (Tex. App.—San Antonio Jan. 10, 2018, no pet.) (mem. op.).

## Pension and Retirement

In his second issue, Kozera asserts that the "JUDGMENT ON PENSION AND RETIREMENT [IS] UNEQUITABLE AND REACHES BEYOND DATE OF RENDITION."

In regard to this issue, Kozera has also not provided any legal analysis or citations to appropriate authorities to support his argument. *See* TEX. R. APP. P. 38.1(i); *Marin*, 373 S.W. 3d at 75 (failure to provide substantive analysis of issue or cite appropriate authority waives complaint); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) (same). Accordingly, we hold that Kozera has waived his second issue.

## Enforceability of Premarital Agreement

In his third issue, Kozera asserts that there is insufficient evidence to support the trial court's invalidation of the parties' premarital agreement.

Generally, a premarital agreement is interpreted like other contracts, which, if unambiguous, is a question of law for the court. *In re Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 122 (Tex. 2018). These agreements are presumptively valid, but may be set aside if not voluntarily signed or unconscionable. *See* TEX. FAM. CODE § 4.006(a); *In re Marriage of Lehman*, No. 14-17-00042-CV, 2018 WL 3151172, at *3 (Tex. App.—Houston [14th Dist.] June 28, 2018, no pet.) (mem. op.). Here, the trial court concluded that the premarital agreement is unenforceable on the grounds that it was not signed voluntarily and it is unconscionable.

In his brief, Kozera directs this Court to a case in which an appellate court held that a premarital agreement was entered into voluntarily. However, he fails to provide substantive analysis as to how this authority applies to the facts of this case, and he does not provide any legal analysis to support his argument. *See* TEX. R. APP. P. 38.1(i); *see also Marin*, 373 S.W. 3d at 75 (failure to provide substantive analysis of issue or cite appropriate authority waives complaint); *Huey*, 200 S.W.3d at 854 (same). Accordingly, we hold that Kozera has waived this portion of his third issue.

In regard to whether the premarital agreement is unconscionable, we note that because the trial court's invalidation of the parties' premarital agreement in its final divorce decree may be upheld on the ground that Velemir signed it

12

involuntarily, we need not address whether the agreement is also unconscionable. *See* TEX. FAM. CODE ANN. § 4.006(a); *see also* TEX. R. APP. P. 47.1.

## Transcription of Testimony

In his fourth issue, Kozera asserts that there was "an issue in the transcription of the testimony of . . . Velemir . . . during her direct examination by her attorney . . . , especially regarding the questions around the Prenuptial (Premarital) Agreement . . . which are detailed in the sections above."

In his brief, Kozera has not provided any legal analysis or citations to appropriate authorities to support his argument. *See* TEX. R. APP. P. 38.1(i); *see also Marin*, 373 S.W. 3d at 75 (failure to provide substantive analysis of issue or cite appropriate authority waives complaint); *Huey*, 200 S.W.3d at 854 (same). Accordingly, we hold that Kozera has waived his fourth issue.

## Child Support Withholding

In his fifth issue, Kozera asserts that the trial court's final divorce decree improperly directs that child support payments be made monthly instead of bi-weekly.

In his brief, Kozera has not provided any legal analysis or citations to appropriate authorities to support his argument. *See* TEX. R. APP. P. 38.1(i); *see also Marin*, 373 S.W. 3d at 75 (failure to provide substantive analysis of issue or

cite appropriate authority waives complaint); *Huey*, 200 S.W.3d at 854 (same). Accordingly, we hold that Kozera has waived his fifth issue.

## "Minor Issues"

In his statement of issues in his brief, Kozera purports to raise "major" and "minor" issues. He presents the following as "minor" issues, in addition to the "major" issues previously addressed above: "Trial Court's Willful Ignorance of the Agreed Temporary Orders in Favor o[f] Appellee"; "Incorrect and Baseless Finding of Fact Regarding Continuation of Marriage and Pilfering of Assets Against Temporary Restraining Order in Effect"; "Delays of Process"; "Recordings of Trial and Hearings Waived and Prohibited"; "Formal Bill of Exception Impossible to File"; and "Nonsense Responses to Motions Filed by Appellee." Although Kozera briefly expands on these issues in his "Summary of Argument" section in his brief, he does not address them in his section on "Argument on Issues and Points of Error." And nowhere in the discussion of issues six through eleven does Kozera provide any authority or substantive legal analysis to support his argument on these "minor" issues. *See* TEX. R. APP. P. 38.1(i); *see also Marin*, 373 S.W. 3d at 75 (failure to provide substantive analysis of issue or cite appropriate authority waives complaint); *Huey*, 200 S.W.3d at 854. Accordingly, we hold that Kozera has waived these remaining issues.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Massengale.