Opinion issued April 22, 2025



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-23-00087-CV

_____

**JASON ROBERT JIMENEZ, Appellant**

**V.**

**ELIZABETH ASHLEY JIMENEZ, Appellee**

---

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-43994**

---

## MEMORANDUM OPINION

This divorce case concerns the interpretation of a generalized premarital agreement, that the husband, Jason Jimenez, purchased on the internet, and the division of spousal property. On appeal from the trial court's final decree of divorce, Jason contends that the trial court failed to follow the terms of that

premarital agreement with respect to its division of property. According to Jason, all assets, income, and property ever put in one spouse's name, at any time, should be considered the separate property of that spouse.

We disagree and affirm the trial court's final decree of divorce.

## Background

In February 2010, Ashley and Jason Jimenez signed a premarital agreement that Jason had purchased on the internet from a company in Mississippi. They were married seven months later and three children followed.

In 2021, Ashley filed for divorce. She sought to enforce the premarital agreement and divide the marital estate in accordance with its terms. Jason counter-petitioned for divorce. He also sought to enforce the premarital agreement.

Prior to trial, Ashley and Jason entered into a mediated settlement agreement regarding possession and conservatorship of their children. The trial court then conducted a bench trial to determine the division of property. It awarded Ashley 60% of a Hargrove 401(k), 100% of a Fidelity Rollover IRA, a lump-sum payment of $20,000, and a judgment of $42,976.66—representing a reimbursement claim to

2

the community estate for amounts expended on Jason's separate property during the marriage.[1] Jason timely appealed.

## Premarital Agreement

Jason contends on appeal that the trial court improperly divested him of his separate property, that Ashley waived any reimbursement claims, and that the trial court improperly awarded Ashley a lump-sum payment. Specifically, Jason argues that in the premarital agreement "both parties specifically agreed that any property in one spouse's name would be awarded to that spouse" and that "[e]ach party also specifically agreed to waive any claims against the other's separate property." Based on that view, Jason asserts that the trial court abused its discretion when it awarded Ashley 60% of his Hargrove 401(k) and 100% of his Fidelity Rollover IRA.

Ashley, on the other hand, argues that the agreement recognized a community estate, that it "exempted only certain things from that community estate," and that the trial court recognized the premarital agreement "did not recategorize Jason's earnings as his separate property."

---

[1] The trial court's rendition states: "The Court finds that the Premarital Agreement (admitted as Exhibit R1) is valid; however, the Court disagrees with [Jason's] interpretation of its terms. The Court finds that the Premarital Agreement supports some but not all of [Jason's] separate property claims" and it confirmed some of Jason's separate property. The decree also specified that Jason would pay $1,000 monthly to Ashley and that the "award for reimbursement is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support."

## A.   Standard of Review and Applicable Law

In a decree of divorce, a trial court must order a division of the marital estate in a manner that is just and right, having due regard for the rights of each party. *See* TEX. FAM. CODE § 7.001.  A trial court is afforded broad discretion in effecting a just and right division. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); TEX. FAM. CODE § 7.001.  That division will not be reversed on appeal unless the trial court clearly abused its discretion. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018); *Murff*, 615 S.W.2d at 698; TEX. FAM. CODE § 7.001.  To establish a clear abuse of discretion, the complaining party must show that the trial court acted arbitrarily or unreasonably and without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985); *Lawrence v. Kohl*, 853 S.W.2d 697, 699 (Tex. App.—Houston [1st Dist.] 1993, no writ).

In making a just and right division, a trial court may not take the separate property of one spouse and award it to the other spouse. *See* TEX. CONST. art. XVI, § 15; *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977).  A trial court thus abuses its discretion when it mischaracterizes a spouse's separate property as community property and awards some of that property to the other spouse. *See* *Eckhardt v. Eckhardt*, 695 S.W.3d 883, 889 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

4

In Texas, "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE § 3.003(a). "Community property consists of the property, other than separate property, acquired by either spouse during marriage." *Id*. § 3.002. And "any spouse's personal income is community property." *Kelly v. Kelly*, 634 S.W.3d 335, 356 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App.—Fort Worth 2002, pet. denied)).

Likewise, "when separate property produces income, and that income is acquired by a spouse during marriage, it is [also] community property."[2] *McClary*, 65 S.W.3d at 834. Consequently, although the pre-marriage balance of an individual retirement account is considered to be a spouse's separate property, any appreciation or benefit accruing to that account during the marriage is community property. *Id*. at 835.

Parties to a premarital agreement may contract to alter their rights and obligations "in any of the property of either or both of them whenever and wherever acquired or located." TEX. FAM. CODE § 4.003(a)(1) (listing content that parties may alter in premarital agreement). We interpret premarital agreements like other written contracts. *Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 122 (Tex.

---

[2]     *See also Williams v. Williams*, 246 S.W.3d 207, 211 n.2 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Alsenz v. Alsenz*, 101 S.W.3d 648, 653 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

2018) (quoting *Williams v. Williams*, 246 S.W.3d 207, 210 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). But there is one important distinction between the interpretation of a premarital agreement and a normal contract. Premarital agreements must be narrowly construed in favor of the community estate. *Fischer-Stoker v. Stoker*, 174 S.W.3d 272, 278–79 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Williams*, 246 S.W.3d at 211.

Here, neither party contends that the premarital agreement is invalid or ambiguous. Thus, our interpretation of this premarital agreement is a question of law for the court. *See Marriage of I.C. & Q.C.*, 551 S.W.3d at 122. In doing so, our primary concern is to ascertain the parties' intent as expressed in the instrument itself. *Id.* "'Objective manifestations of intent control,' not the subjective intent of the parties." *Id.* (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763–64 (Tex. 2018)). And "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012).

Where the parties have entered into an enforceable premarital agreement, the agreement's terms dictate the separate or community character of the property it addresses. *See In re Marriage of I.C. & Q.C.*, 551 S.W.3d at 122. The court cannot rewrite or add to the contract's language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124

6

S.W.3d 154, 162 (Tex. 2003). We also construe the words used in the contract "in the context in which they are used." *URI*, 543 S.W.3d at 764.

Lastly, in determining whether the trial court here clearly abused its discretion in making this property division, we note that there are no findings of fact.[3] Jason made a timely request for findings of fact, but none were made. Jason then filed a notice of past due findings, but it was untimely. Consequently, the trial court was not required to make any findings. And it did not. *See, e.g.*, *Key Energy Servs., LLC v. Shelby Cnty. Appraisal Dist.*, 428 S.W.3d 133, 150 (Tex. App.— Tyler 2014, pet. denied).

Based on this procedural backdrop, we must presume that the trial court made all the necessary findings to support its judgment. *Pharo v. Chambers Cnty., Tex.*, 922 S.W.2d 945, 948 (Tex. 1996). If the trial court's implied findings are supported by some evidence, we must uphold the judgment on any theory of law applicable to the case. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In determining whether some evidence supports the judgment and implied findings of fact, we consider only the evidence most favorable to the issue and disregard entirely any evidence to the contrary.[4] *Id.*

---

[3]     Jason does not complain of the lack of findings on appeal.

[4]     In Ashley's first responsive argument, she asserts that because the trial court did not issue findings of fact, we cannot determine the equity of a property division and can affirm on that basis alone. We would agree with Ashley if Jason's

7

**B.    Analysis**

Again, neither party contends that the premarital agreement is ambiguous. They simply advance differing interpretations of it. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W. 2d 587, 589 (Tex. 1996) ("An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract."). We thus begin our analysis with an examination of the contract language. It provides, in relevant part, as follows:

> WHEREAS, the parties hereto have accumulated separate estates; and
>
> . . .
>
> WHEREAS, the parties are about to contract marriage and execute this agreement in contemplation of marriage to be effective upon their marriage in accordance with the laws of the State of Texas, including any Uniform Premarital Agreement Act, or other applicable laws, adopted by the State of Texas; and
>
> WHEREAS, the parties desire to enter into an agreement regarding certain properties, responsibilities, duties and obligations including but not limited to any interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings; and
> . . .
>
> WHEREAS, the parties have furnished each other with a financial statement which each party acknowledges is a full and

---

appellate complaint was that the trial court abused its discretion in its just and right division. But here, Jason's primary complaint is that the trial court divested him of separate property, which if meritorious, requires this Court to reverse and remand. *See Eckhardt v. Eckhardt*, 695 S.W.3d 883, 889 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

complete disclosure of substantially all of the real and personal property now owned by him or her and agree that the values are an estimate by him or her of the approximate present value of the property. All property listed is now and shall continue to be separate properties of the respective parties. Originals or copies of said financial statements are attached here as Exhibits "A" and "B"; and

WHEREAS, the parties desire to express in writing their agreement that, except as hereinafter specifically provided, their marriage shall not in any way chan[g]e their rights or the rights of their heirs (exclusive of the parties) or of their devisees or legatees, in the real and personal property owned or hereafter acquired by each of the parties and that said rights shall be governed by the terms of this agreement; and

Now, Therefore, in consideration of the parties and of their mutual promises and agreements, they agree one with the other as follows:

(1) Each of the parties shall have full control of his or her own separate property, real, personal and mixed, wherever the property is located. . . .

(2) Except as otherwise expressly provided, each of the parties hereby waives, relinquishes, conveys, quitclaims, bars, discharges, surrenders and releases, and hereby agrees to waive, relinquish, convey, quitclaim, bar, discharge, surrender and release, to the other all of the following:

(a) Any and all of his or her right, title and interest of every kind and description, which he or she may have, acquire, enjoy or be seized by reason of, or on or after, their marriage, as the wife, husband, widow or widower of the other party in the separate property of the other party, whether real, personal and mixed and wherever located; and

9

(b) Any and all rights to any property of the other party titled in that other party's sole name, whether before or after the marriage; and

. . .

(7) During the course of the marriage, all property *acquired* by each party in their own name shall be deemed to be part of their separate estate and by the terms hereof, each party hereby waives and relinquishes all claim to the separate estate of the other. Likewise, all property acquired during the marriage in the joint name of both parties shall be deemed to be part of their joint estates and thereby evidence their intent to grant the powers and rights to the parties as to said jointly owned property as is provided to spouses by operation of law. (Emphasis added).

. . .

(9) Despite any other provisions of this instrument, this agreement shall not affect in any way the parties' rights, title, powers, duties, discretions, immunities and interest in any property owned in joint tenancy or entirety with rights of survivorship, which they may hereafter acquire.[5]

The premarital agreement begins with various recitals. A recital in an agreement acts as the formal statement establishing the reason for the transaction, but it cannot be used to contradict the operative terms of the actual agreement. *See McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.]

---

[5] The parties attached personal financial disclosure statements to the agreement. Pertinent here, Jason's financial disclosure statement did not include his Hargrove 401(k) or his Fidelity Rollover IRA.

10

2003, pet. denied); *All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009, no pet.). Here, the premarital agreement's recitals manifest an intent to address various property interests, to make certain property separate, and to express the parties' desire that their marriage shall not change their rights.

However, the operative terms of the agreement itself do not expressly designate Jason's retirement accounts, acquired during marriage, as his separate property. Instead, Paragraph 7, which addresses the acquisition of property during marriage, states in relevant part that: "During the course of the marriage, all property *acquired* by each party in their own name shall be deemed to be part of their separate estate and by the terms hereof, each party hereby waives and relinquishes all claim to the separate estate of the other." (Emphasis added).

Jason broadly interprets this sentence to mean that because the retirement accounts are held in his name, the entirety of those accounts, regardless of the source of funds, are his separate property. Stated differently, Jason argues that the income he earned during the marriage, and which went into the retirement accounts, is encompassed by the term "property" in Paragraph 7, and thus constitutes his separate property.

Jason concedes that "the Agreement does not specifically state that each party's 'income' [during marriage] will be considered that party's separate

property."  Indeed, the premarital agreement does not define the term "property." In some parts of the agreement, "property" refers to real property.  And in other parts of the agreement, the term appears to refer to both real and personal property. But no provision of the premarital agreement expressly provides that "property" is "income."

Nevertheless, Jason argues that is the intent of the agreement.  And that intent is revealed, according to Jason, when the term "property" in Paragraph 7 is construed to mean "income."  As support, he points to section 4.001 of the Texas Family Code.  It defines "property" as "*an interest*, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings." TEX. FAM. CODE § 4.001 (emphasis added).  And we recognize that Texas law defines "property" broadly. *See Winger v. Pianka*, 831 S.W.2d 853, 857 (Tex. App.—Austin 1992, writ denied) ("Property extends to every species of valuable right and interest.").  "If salary, personal earnings and income are not property, we are at a loss to know what to label money earned and received." *Id.*

But even if we agreed with Jason's reading of "property," that does not end our inquiry.  We still must apply it to the plain language of the premarital agreement.  As referenced above, the operative language in Paragraph 7 states "all property *acquired* in their own name shall be deemed to be part of their separate estate."

Jason asks us to construe this language to mean that "all property [held] by each party in their own name shall be deemed to be part of their separate estate." That, however, would require us to disregard the word "acquired" and substitute it with the word "held." And that we cannot do. We may not rewrite contract language, or add to or subtract from it, under the guise of interpreting it. *URI*, 543 S.W.3d at 770; *USPLS, LC v. Gaas*, No. 01-20-00604-CV, 2022 WL 3722135, at *4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, pet. denied) (mem. op.).

Accordingly, when we construe this language as written, and in favor of the community estate, it requires Jason to demonstrate that he *acquired* the "property" (the retirement accounts) in his own name—and not merely *held* them in his own name. *See Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001) ("There is a presumption under the Family Code that property *held* during marriage is community property[.]" (emphasis added)). We thus conclude as a matter of law that the premarital agreement, in particular Paragraph 7, does not classify *all* "property," including Jason's retirement accounts or his future salary and wages, however and whenever *held* in his name, as his separate property.[6]

Jason therefore had the burden to establish, by clear and convincing evidence, that he *acquired* the retirement accounts in question in his own name—in

---

[6] In light of holding that Paragraph 7 did not classify all property as separate, it is unnecessary to address Jason's argument regarding Paragraph 2, which provided that the parties waived rights to their separate property. *See* TEX. R. APP. P. 47.1.

order for them to be considered his separate property under the premarital agreement. *See* TEX. FAM. CODE §§ 3.003(b) (stating that degree of proof necessary to establish that property is separate is clear and convincing evidence), 3.007(c) (stating that separate property interest of spouse in defined contribution retirement plan may be traced).

Generally, whether property is separate or community property is determined by its character at inception. *Barnett*, 67 S.W.3d at 111. However, contributions made to 401(k)s and retirement plans with earned income during marriage are community property. *Leax v. Leax*, 305 S.W.3d 22, 33 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see Kelly*, 634 S.W.3d at 350; *see also McClary*, 65 S.W.3d at 836. If a spouse asserts that a 401(k) or retirement plan, or any part thereof, is separate property—that spouse must prove that separate character by clear and convincing evidence. *Kelly*, 634 S.W.3d at 348.

Here, Jason's evidence of his retirement accounts consisted of two account statements for the Hargrove 401(k)[7] and one account statement for the Fidelity Rollover IRA.[8] Jason testified that both accounts were in his name and that he obtained them while being married. But he did not present any evidence on how

---

[7] The July 31, 2021 Hargrove 401(k) statement showed a balance of $113,514.79 and the February 25, 2022 Hargrove 401(k) statement showed a balance of $113,317.54.

[8] The February 28, 2022 Fidelity Rollover IRA statement showed a balance of $246,466.12 (account ending in 5374).

he acquired the accounts or the source of the funds within the accounts to try to rebut the community presumption. He did not even provide the opening statement for the accounts. *See Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that despite husband's argument that accounts were designated as separate property in premarital agreement, husband's testimony alone and no deposit slips or bank records to trace money did not overcome community property presumption).

Jason also failed to demonstrate what portion of the accounts increased as a result of interest and dividends.[9] Interest and dividends paid on investments, whether the investments are separate property or not, are income under Texas law and are generally community property.[10] *See Alsenz v. Alsenz*, 101 S.W.3d 648, 653 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *McClary*, 65 S.W.3d at 834. Thus, even if Jason had presented clear and convincing evidence that his

---

[9] Jason's Fidelity Rollover IRA statement showed that from March 2022 through January 2023, the investments were estimated to generate $10,680 in income. As stated previously, Jason only presented a few statements and neither the trial court, nor Ashley could determine the initial balance or whether any money flowed out of these accounts during the marriage. *See Steenrod v. Pidgeon*, No. 03-22-00659-CV, 2024 WL 3528672, at *10 (Tex. App.—Austin July 25, 2024, no pet.) (mem. op.).

[10] The trial court's decree provided that the Fidelity Rollover IRA included "[o]ne hundred (100%) of the following individual retirement accounts along with any gains or losses of that interest." The decree also provided that as of September 29, 2022, the vested account balance of the Hargrove 401(k) also included "gains or losses of that interest, including the value of any outstanding loans, together with any interest, dividends, gains or losses on that amount arising since that date. . . ."

retirement accounts were acquired in his own name and the source of the funds, and he did not, the premarital agreement does not include any provision establishing that increases from separate property would remain separate property. *See McClary*, 65 S.W.3d at 834 ("When separate property produces income, and that income is acquired by a spouse during marriage, it is community property.").

As a result, in the absence of any such provision, and with no evidence of tracing[11] to establish the Hargrove 401(k) and the Fidelity Rollover IRA as his separate property under the premarital agreement, Jason failed to satisfy his burden to rebut the community property presumption as to these retirement accounts by clear and convincing evidence. *See In re Marriage of Nash*, 644 S.W.3d 683, 698 (Tex. App.—Texarkana 2022, no pet.) ("When a trial court is left to speculate, based on testimony and spotty records, what part of an account is original separate-

---

[11] Gaps in account statements can make tracing evidence less than "clear and convincing." *See Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at *9 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.) (concluding that three-month gap in account statements was less than clear and convincing evidence to support separate property claim, especially considering high growth of account during that period); *In re Everse*, 440 S.W.3d 749, 752 (Tex. App.—Amarillo 2013, no pet.) (noting that tracing evidence included gap between account statements for November 1999 and September 2010 and concluding that trial court did not err by finding husband's tracing evidence "to be less than the clear and convincing evidence required").

property principal and what part is community, the community presumption prevails").[12]

We therefore must conclude that the trial court did not clearly abuse its discretion when it impliedly found that Jason did not overcome the community property presumption as to the Hargrove 401(k) and the Fidelity Rollover IRA.

## Reimbursement Claim

Jason next argues that Ashley waived any reimbursement claims to the community estate when she signed the premarital agreement. Jason contends that the following two paragraphs in the premarital agreement support his argument:

> (2)    Except as otherwise expressly provided, each of the parties hereby waives, relinquishes, conveys, quitclaims, bars, discharges, surrenders and releases, and hereby agrees to waive, relinquish, convey, quitclaim, bar, discharge, surrender and release, to the other all of the following:
>
> (a) Any and all of his or her right, title and interest of every kind and description, which he or she may have, acquire, enjoy or be seized by reason of, or on or after, their marriage, as the wife, husband, widow or widower of the other party, in the separate property of the other party,

---

[12] *See also Pearson v. Fillingim*, 332 S.W.3d 361, 365 (Tex. 2011) (stating that to claim certain property as separate, party has burden to trace and clearly identify property as separate by clear and convincing evidence); *Rivera v. Hernandez*, 441 S.W.3d 413, 423 (Tex. App.—El Paso 2014, pet. denied) (noting that party may plead that brokerage account is separate property, "but income earned and dividends paid—if not clearly traced—will result in characterization of the account as community property due to commingling").

> whether real, personal and mixed and wherever located. . . .

As Ashley notes, and we agree, reimbursement to the community estate is not mentioned anywhere within the agreement. Because we construe premarital agreements narrowly, we decline to conclude that the paragraphs above served to waive Ashley's reimbursement rights to the community estate. *See Fischer-Stoker*, 174 S.W.3d at 278–79 (noting that courts construe premarital agreements narrowly in favor of community estate). Moreover, other than citing to the Family Code's reimbursement statutes,[13] Jason cites no authority in support of his claim that the agreement's paragraphs applied to waive Ashley's reimbursement rights. *See* TEX. R. APP. P. 38.1(i). We thus decline to address that aspect of Jason's reimbursement complaint that is inadequately briefed.[14]

---

[13] *See* TEX. FAM. CODE §§ 3.402, 3.404, 3.406, 3.410 (recognizing that premarital agreement can waive reimbursement claims).

[14] Jason also argues that even if Ashley retained the right to make a reimbursement claim, the parties presented no evidence that any community property reduced the principal on the mortgage secured by Jason's home. Within this issue, Jason cites no authority in support of his argument, and it is therefore waived. *See* TEX. R. APP. P. 38.1(i). Regardless, Jason stipulated at trial to the value of Ashley's inventory and appraisement as accurate, which inventory listed her reimbursement claim—reduction in principle of mortgage loan—of $85,953.31. Ashley's testimony on how the mortgage was paid was conflicting. At one point, Ashley testified that while Jason paid the mortgage on the house, she could not say which account paid for it. She later said Jason did not take money from the joint account to pay his mortgage. As the finder of fact, the trial court could resolve this conflicting evidence in Ashley's favor. *See Munters Corp. v. Swissco–Young Indus., Inc.*, 100 S.W.3d 292, 299 (Tex. App.—Houston [1st Dist.] 2002, pet. dism'd).

## Lump-Sum Award

Lastly, Jason broadly asserts that the trial court's award of a $20,000 lump sum could only have come from his separate property because the parties' joint checking account had a balance of only $1,193,29. The premise of Jason's complaint is that under his interpretation of the agreement, the parties' community property consisted only of their joint checking account, which contained $1,293.29. Thus, by awarding Ashley a $20,000 lump sum, the trial court must have divested him of his separate property.

Based on our earlier holding that the trial court did not abuse its discretion in concluding that Jason failed to rebut the community property presumption as to his two retirement accounts, and therefore the community estate consisted of more than just the parties' joint checking account, we necessarily overrule Jason's complaint that the trial court's lump-sum award divested Jason of his separate property. Further, Jason does not cite any legal authority and provides no legal argument to support his position, just a string of conclusory assertions. We hold this issue is waived due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i).[15]

We overrule Jason's first issue.

---

[15] Based on our disposition of Jason's first issue, it is unnecessary to address Jason's second issue, requesting that we render judgment in his favor. *See* TEX. R. APP. P. 47.1 (stating that court of appeals must address every issued raised and necessary to final disposition of appeal).

**Conclusion**

For all of the reasons above, we affirm the trial court's final decree of divorce in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.